IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80590-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LAKENDRICK L. BUTTS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Lakendrick "Kenny" Butts was convicted of one count of first degree rape of a child.

Butts contends the court prejudiced him by allowing an amendment to the charging period in the information. Because the amendment did not change an essential element of the crime charged and he fails to show prejudice from the amendment, the court did not abuse its discretion.

Butts argues the court prejudiced his right to present a defense by rejecting his proffered evidence that the victim's biological grandmother was a prostitute whose trade gave the victim a precocious sexual knowledge. Because this evidence was itself an inference built upon other inferences and only exculpatory by inference, the court did not abuse its discretion by excluding the evidence under ER 403 as unduly prejudicial and confusing to the jury.

Butts argues the court abused its discretion by admitting unreliable child hearsay. Because the trial court's unchallenged findings of fact and the record as a whole support its conclusion that the victim's hearsay statements were reliable, Butts fails to show the court abused its discretion.

Therefore, we affirm.

## FACTS

M.M. was placed with foster mother Francis Butts in late April of 2017. Francis[1] is the mother of M.M.'s godmother. Francis's sister, Gloria, is the mother of then-17-year-old Kenny. Butts family gatherings were often held at Gloria's house, and Francis brought M.M. and her grandchildren to Gloria's house at least once per month. There was a computer in Kenny's room, and M.M. would go in there to play games. Kenny was at home at least "once a month" when M.M. and his cousins were visiting.[2]

On June 1, 2018, guidance counselor Kyra Miller was teaching a lesson to M.M.'s kindergarten class about appropriate and inappropriate touching. After reading a story in which an older boy asks to touch the private parts of the main character, Miller wrapped up the lesson by asking the class what they should do if someone tried to touch them inappropriately. M.M. "blurted out, '[W]hen my cousin tells me to suck his private, I'm going to say no.'"[3] After class, Miller spoke

---

[1] Because Lakendrick, Francis, and others have the same last name, we refer to them by their first names.

[2] Report of Proceedings (RP) (Aug. 22, 2019) at 1086.

[3] RP (Aug. 7, 2019) at 73.

privately with M.M., and M.M. confirmed what she had said in class. Miller filed a report that day with Child Protective Services (CPS).

Over the following week, CPS investigator Margarite Hatter and forensic child interview specialist Alyssa Lane both interviewed M.M. In her interview with Layne, M.M. said May 2 was the last time Kenny made her perform oral sex on him. Detective Heather Castro of the Federal Way Police Department arrested and interviewed Kenny. In August of 2018, the State charged Kenny with committing one count of first degree child rape between May 1 and June 1. The State later told defense counsel it would expand the charging period to include the entire duration of M.M.'s time in Francis's care.

On the first day of pretrial motions and before jury selection, the State moved to amend the information by expanding the charging period to encompass the time from April 17, 2017 through June 1, 2018. The court concluded the amendment would not prejudice Kenny and granted the motion. The court also held a child hearsay hearing, made findings of fact, and concluded M.M.'s hearsay statements were admissible under RCW 9A.44.120. A pretrial defense motion sought permission to argue M.M.'s precocious sexual knowledge came from living with her biological grandmother, whom Kenny alleged was a prostitute who took customers to her home. The court denied the motion, concluding the defense's offer of proof was insufficient given the potential for undue prejudice and jury confusion.

In Kenny's opening statement, defense counsel explained 11 people lived in Gloria's house, and the teenaged Kenny wanted to "make himself as scarce as possible" because he "[did] not want to be in a place where there is no quiet, there is no privacy, and there is no space."[4]  M.M. testified at trial and reiterated that Kenny made her perform oral sex on him between five and seven times.  Miller also testified, relating M.M.'s initial disclosures in school.  M.M.'s interviews with Hatter and Lane were played for the jury.  The jury found Kenny guilty.

Kenny appeals.

## ANALYSIS

### I.  Amended Information

CrR 2.1(d) allows amendment of an information any time before the verdict if the substantial rights of the defendant will not be prejudiced.  We review a decision to grant a motion to amend an information for abuse of discretion.[5]  A court abuses its discretion when its decision rests on untenable grounds or was made for untenable reasons.[6]

Kenny argues the court abused its discretion because it allowed an amendment of the charging period on the first day of pretrial motions.  A constitutionally permissible charging document must allege "all essential elements of a crime to inform a defendant of the charges against him and to allow for

---

[4] RP (Aug. 19, 2019) at 582-83.

[5] State v. Brooks, 195 Wn.2d 91, 96, 455 P.3d 1151 (2020).

[6] Id.

4

preparation of his defense."[7]  The date when a defendant committed first degree

rape of a child is not an essential element of the crime.[8]  Because the date is not

an essential element, Kenny has the burden of proving prejudice from the

amended charging period.[9]

Kenny argues he was prejudiced because defense counsel had closely

investigated the original charging period and did not have time to investigate his

whereabouts for the amended charging period.  He explains that because he

raised a "partial alibi defense,"[10] "[t]he late amendment forced Kenny to choose

between proceeding with a trial that had already started or delaying in order to

have adequately prepared counsel."[11]

Although Kenny now asserts he raised an alibi defense, his stated defense

before trial was general denial.  His arguments at trial also reflected a general

denial.  Kenny's defense theory was that Gloria's house was too crowded, too

---

[7] Brooks, 195 Wn.2d at 97 (citing U.S. CONST. amend. VI; WASH. CONST. art. I, § 22).

[8] See RCW 9A.44.073(1) ("A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim."); see also State v. Goss, 186 Wn.2d 372, 379, 378 P.3d 154 (2016) (essential elements are "necessary to establish the very illegality of the behavior charged") (internal quotation marks omitted) (quoting State v. Zillyette, 178 Wn.2d 153, 158, 307 P.3d 712 (2013)).

[9] See Brooks, 195 Wn.2d at 98 (concluding the defendant had the burden of proving prejudice because the amended charging period in an information did not change the essential elements of the charged crime).

[10] Reply Br. at 5.

[11] Appellant's Br. at 28-29.

busy, and he was too infrequently present to have had the opportunity to rape M.M.[12]  For example, he called three friends, a friend's father, and a former manager as witnesses to testify about how often he was busy outside his home. Kenny also introduced more than one dozen photos of his house to show its layout and explain how crowded it was.  During closing argument, defense counsel argued "Kenny is simply not really home. . . . [H]e is frequently at work, he is out with friends, he is spending the night elsewhere."[13]  This is a general denial defense based upon lack of opportunity, not an alibi.  We also note that Kenny's strategy of accounting for every moment of the original charging period was impractical when his own testimony demonstrated he was home "like once a month" when M.M. and his cousins visited.[14]  M.M. testified at least one rape occurred in May of 2018 when she was visiting Kenny's house with her cousins, and Francis testified that Kenny, M.M., and her grandchildren were at Gloria's house during a May 2018 birthday party.  Kenny fails to explain how expanding the charging period impacted his defense.[15]

---

[12] See RP (Aug. 19, 2019) at 584-85 (explaining that Kenny was "not home" and "does not want to be home" and that "[t]he evidence is going to show that when you look at the photos of this house, the sketch of this house, and you hear the evidence and number of kids running in and out of rooms, . . . the number of grownups who are around on the regular, you will conclude that Kenny did not commit this crime.").

[13] RP (Aug. 26, 2019) at 1157-58.

[14] RP (Aug. 22, 2019) at 1086.

[15] We also note that even after the State had disclosed its intent to expand the charging period, Kenny opposed the State's motion to continue the trial from July 22 to August 12.  Such opposition to the continuance is inconsistent with a claim that the expanded charging period prejudiced Kenny.  See State v. Gehrke,

Because Kenny fails to prove prejudice from the amended charging period in the information, the court did not abuse its discretion.[16]

II. Not Admitting Evidence of Exposure to Prostitution

In his opening brief and statement of additional grounds, Kenny argues the court harmed his right to present a defense by refusing to admit evidence.[17] He sought to advance a theory that M.M. gained precocious sexual knowledge before entering foster care because her grandmother was a prostitute operating out of her home. He moved to admit evidence of this theory, and the court denied the motion as unduly prejudicial or confusing to the jury.

We review a court's evidentiary decisions for abuse of discretion and review de novo whether the defendant's right to present a defense was violated.[18] Relevant evidence can be excluded under ER 403 when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."[19]

---

193 Wn.2d 1, 18, 434 P.3d 522 (2019) ("Failure to seek a continuance indicates a lack of surprise and prejudice only when the amendment is made at the beginning of trial.").

[16] See CrR 2.1(d) (court may allow amendment of an information before a verdict unless the defendant's substantial rights are prejudiced).

[17] Kenny also contends his Sixth Amendment confrontation clause rights were harmed, but he does not identify any witnesses who he was prevented from cross-examining after they testified against him. Thus, we decline to address this alleged violation.

[18] State v. Bedada, 13 Wn. App. 2d 185, 194, 463 P.3d 125 (2020).

[19] ER 403.

A court considers the whole case when weighing the risk of unfair prejudice, including

> "the importance of the fact of consequence for which the evidence is offered in the context of the litigation, the strength and length of the chain of inferences necessary to establish the fact of consequence, the availability of alternative means of proof, whether the fact of consequence for which the evidence is offered is being disputed, and, where appropriate, the potential effectiveness of a limiting instruction."[20]

"A court does not violate a defendant's constitutional rights when the materiality of an absent witness's testimony is merely speculative or overwhelmed by uncontroverted evidence."[21] A defendant has no right to introduce inadmissible evidence.[22] Only when the evidence is of high probative value, "'it appears no state interest can be compelling enough to preclude its introduction'" without violating the state and federal constitutions.[23]

Kenny compares this case to State v. Carver, where the court held the trial court erred by excluding evidence of past sexual abuse that the defendant stepfather sought to introduce to explain the victims' precocious sexual knowledge.[24] On cross-examination, the stepfather wanted to ask one victim about a statement she had made to the authorities that only her grandfather had

---

[20] Bedada, 13 Wn. App. 2d at 193-94 (quoting State v. Kendrick, 47 Wn. App. 620, 628, 736 P.2d 1079 (1987)).

[21] State v. Cayetano-Jaimes, 190 Wn. App. 286, 296, 359 P.3d 919 (2015).

[22] State v. Darden, 145 Wn.2d 612, 624, 41 P.3d 1189 (2002).

[23] State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting State v. Hudlow, 99 Wn.2d 1, 16, 659 P.2d 514 (1983)).

[24] 37 Wn. App. 122, 123-24, 678 P.2d 842 (1984).

sexually abused her.[25]  The trial court relied upon the rape shield statute to exclude the evidence, and the appellate court reversed because the statute did not apply and the highly relevant and exculpatory nature of the evidence outweighed any prejudice from the testimony.[26]

Unlike Carver, the proffered evidence here was highly speculative and required making, as the trial court explained, "a pretty big leap."[27]  Kenny admitted he did not have any direct evidence M.M.'s grandmother was a prostitute or that M.M. witnessed acts of prostitution.  He explained that "[n]o one is going to say that her grandmother was a prostitute because I don't have that specific evidence."[28]  And he admitted the relevant evidence was an inference based upon other inferences.  Also unlike Carver, the proffered prostitution evidence was not directly exculpatory and required inferring that M.M.'s precocious sexual knowledge likely came only from witnessing acts of prostitution and not from having been raped.  Because the proffered evidence was highly speculative and only inferentially exculpatory, the trial court did not abuse its discretion by concluding the evidence was unduly prejudicial or substantially more confusing

---

[25] Id. at 125.

[26] Id. at 124-25.

[27] RP (Aug. 8, 2019) at 241.

[28] Id. at 237.

than probative and excluding it under ER 403.[29]  And because the evidence was inadmissible, Kenny's right to present a defense was not implicated.[30]

III.  Child Hearsay

RCW 9A.44.120 allows admission of child hearsay when a child under 10 described a sexual act performed on the child by another and when the trial court finds the child's statements are reliable.[31]  We review a trial court's decision to admit child hearsay for abuse of discretion.[32]  We review the trial court's findings of fact for substantial evidence.[33]  Unchallenged findings of fact are verities on appeal.[34]

Kenny contends the court abused its discretion by admitting M.M.'s hearsay statements through Miller, Hatter, and Layne.  He does not challenge the trial

---

[29] To the extent that Kenny's statement of additional grounds alleges M.M. gained sexual knowledge because her biological relatives let her be molested, this is a new argument unsupported by any evidence in the record, and we decline to consider it.

[30] Darden, 145 Wn.2d at 624; see Cayetano-Jaimes, 190 Wn. App. at 296 ("A court does not violate a defendant's constitutional rights when the materiality of an absent witness's testimony is merely speculative or overwhelmed by uncontroverted evidence.").

[31] The statute also allows admission of child hearsay under other conditions not present here.

[32] State v. Woods, 154 Wn.2d 613, 617, 114 P.3d 1176 (2005).

[33] State v. A.X.K., 12 Wn. App. 2d 287, 298, 457 P.3d 1222 (2020).

[34] Id.

court's findings of fact, making them verities on appeal.[35]  Thus, the question is whether the court's findings of fact supported its conclusions of law.[36]

Courts use nine factors from State v. Ryan[37] to gauge the reliability of child hearsay:

> "(1) whether there is an apparent motive to lie, (2) the general character of the declarant, (3) whether more than one person heard the statement, (4) the spontaneity of the statements, (5) the timing of the declaration and the relationship between the declarant and the witness, (6) whether the statement contained express assertions of past fact, (7) whether the declarant's lack of knowledge could be established through cross-examination, (8) the remoteness of the possibility of the declarant's recollection being faulty, and (9) whether the surrounding circumstances suggested the declarant misrepresented the defendant's involvement."[38]

No single factor is determinative, but a statement is not considered reliable until the factors are substantially met.[39]

In the court's oral and written ruling, it concluded all nine factors indicated M.M.'s hearsay statements were reliable.  Kenny challenges the court's conclusions about the first, second, fourth, fifth, and ninth Ryan factors.

He argues the court erred about the first factor because M.M. said she "told a lie on Kenny" and therefore had a motive to lie.[40]  But he overlooks M.M.'s

---

[35] Id.

[36] Id.

[37] 103 Wn.2d 165, 691 P.2d 197 (1984).

[38] A.X.K., 12 Wn. App. 2d at 299 (quoting State v. Kennealy, 151 Wn. App. 861, 880, 214 P.3d 200 (2009)).

[39] Kennealy, 151 Wn. App. at 881.

[40] Appellant's Br. at 21.

motive for lying.  The court found that after M.M. first disclosed Kenny's attacks, M.M. asked Miller "[D]id you tell my mom [Francis]?" and was then afraid she would "get into trouble."[41]  According to the court's findings, M.M. said she "told a lie" after Francis learned of M.M.'s disclosure and then told M.M. that she "told [Miller] a lie" and that "you won't see your grandma 'till you're 18-years-old."[42]  The court also found M.M. felt sad during her interview with Hatter because she was afraid of having to go live with "a stranger."[43]  Because the evidence did not show M.M. had a motive to tell harmful lies about Kenny, the court did not err by concluding the first Ryan factor indicated reliability.

Kenny argues the court erred on the second factor by concluding M.M. was a truthful child when no evidence showed she had a reputation for truthfulness. But the court explained M.M. "consistently talked about the same sort of details" regarding Kenny's attacks, and "the continued statements [were] consistent to most degree[s] with what was originally told" in school to Miller.[44]  The only evidence of dishonesty was M.M.'s lie about lying, which she told after Francis suggested she had lied.  Because the evidence does not demonstrate M.M. had a dishonest character and other evidence allowed an inference of an honest character, the court did not err by concluding M.M. was truthful.

---

[41] CP at 96.

[42] CP at 98.

[43] Id.

[44] RP (Aug. 13, 2019) at 382.

For the fourth factor, Kenny contends M.M.'s claims were not spontaneous, but the record does not support him. The court found M.M.'s first disclosure occurred when she "unexpectedly blurted out" in class what Kenny made her do[45] and found the disclosure "was so spontaneous and really startled the person that was hearing it."[46] Similarly, M.M.'s responses to Hatter and Layne were also spontaneous, although they were responses to interview questions. For evaluating child hearsay, statements are spontaneous when the entire context of the statement shows the question was not leading or suggestive.[47] For example, M.M. began telling Hatter about Kenny's attacks after Hatter asked, "Do you remember saying something last week at school? . . . Can you tell me about that?"[48] M.M. responded, "I was saying that Kenny would sometimes show[ ] me his private parts."[49] Hatter then asked "And when was the last time that Kenny showed you his private part?" and M.M. volunteered new information by answering "Like, five times."[50] Hatter's questions did not suggest the answers M.M. gave.

Layne's questions were necessarily more pointed because M.M. initially said she had lied about Kenny, so Layne had to explore M.M.'s past explanations to Miller and Hatter. Thus, Layne's questions, while superficially leading because

---

[45] CP at 95.

[46] RP (Aug. 13, 2019) at 381.

[47] State v. Young, 62 Wn. App. 895, 901, 802 P.2d 829 (1991).

[48] RP (Aug. 7, 2019) at 113.

[49] Id.

[50] Id.

13

they asked directly about Kenny revealing his genitals to M.M., were contextually appropriate and did not steer M.M. toward confirming one version of events over the other. Because the record shows M.M.'s disclosures were spontaneous, the court did not err.

For the fifth factor, Kenny contends M.M's non-neutral relationship with Miller made her initial disclosure and all that followed unreliable. But the law does not discount child hearsay statements only because they were made to someone familiar. Indeed, the court in State v. Kennealy explained a child's hearsay statement is more likely reliable "[w]hen the witness is in a position of trust with a child," such as a nurse with "an authoritative position in the community."[51] Miller was M.M.'s school guidance counselor who had helped her with emotional difficulties several times during the year.[52] Because Miller was a trusted authority figure akin to a familiar medical provider, the court did not err by concluding this relationship demonstrated reliability.

For the ninth factor, Kenny argues, without authority, that the circumstances of M.M.'s initial disclosure weigh against her statements' reliability. The court found M.M.'s initial disclosure was unexpected and appeared "very organic."[53] The court explained that the initial details of M.M.'s disclosure remained consistent

___

[51] 151 Wn. App. 861, 884, 214 P.3d 200 (2009).

[52] See RP (Aug. 7, 2019) at 69 (guidance counselor Miller explaining she helped M.M. around five times during the year when she was struggling emotionally).

[53] CP at 95.

over the next week even as she revealed additional details in other settings. Kenny fails to show how the court erred by concluding these circumstances favored reliability.

The trial court concluded all nine <u>Ryan</u> factors favored admitting M.M.'s hearsay statements. Kenny fails to show the court erred by doing so. Because the <u>Ryan</u> factors support concluding M.M.'s hearsay statements were reliable, the court did not abuse its discretion by admitting them.

Because Kenny fails to establish any basis for reversal, we affirm.

_____

WE CONCUR:

_____     _____
Mann, C.J.                Appelwick, J.