

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 70547-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| ARTURO CAYETANO-JAIMES, | ) | |
| | ) | |
| Appellant. | ) | FILED: September 21, 2015 |
| | ) | |

LEACH, J. — Arturo Cayetano-Jaimes appeals his conviction for rape of a child in the first degree. He contends that the trial court's refusal to allow him to present the testimony of the victim's mother by telephone violated his constitutional right to present a complete defense. Because this unavailable witness's testimony was relevant and highly probative and the State did not show its admission would disrupt the fairness of the fact-finding process, the trial court abused its discretion by excluding it. Because the State cannot show that this error was harmless beyond a reasonable doubt, we reverse and remand for a new trial. We do not reach Cayetano-Jaimes's other claims.

## FACTS

In 2008, V., born February 1, 1998, and her two younger siblings lived with their mother's uncle and his wife[1] in Mount Vernon, Washington. The children lived with this couple, who eventually adopted them, because their mother, Laura Camacho, and V.'s stepfather, Francisco Cayetano-Jaimes, had been deported to Mexico after federal agents arrested them in December 2006.[2]

One day in August 2008, while the children were playing, the wife saw V. put a plastic toy in her mouth in a way that she had "never seen any children do" and that seemed inappropriate. The wife, "surprised and shocked," spoke "sternly" to V. At that point, V. told her that Francisco's brother, Arturo Cayetano-Jaimes, had sexual contact with her once at his house while he and his wife, Irene Rodriguez, babysat V. and her sister.

Arturo Cayetano-Jaimes and Rodriguez moved to Mount Vernon from New York City in 2001. Cayetano-Jaimes's mother, Maria Jaimes, and several of Cayetano-Jaimes's seven siblings and other family members already lived in the area. Cayetano-Jaimes and Rodriguez had three children while they lived in Washington. Arturo and Francisco saw each other at children's parties and other family gatherings but did not socialize much otherwise because Camacho and

---

[1] This opinion will refer to this individual as "wife" rather than by name in an effort to protect V.'s privacy.

[2] Francisco is the biological father of V.'s siblings, but not of V. For clarity, he is referred to here by his first name.

Rodriguez did not get along well. In 2004 or 2005, Cayetano-Jaimes and Rodriguez and the three children returned to New York City.

In her 2008 account to the wife, V. said that after Rodriguez left to go to the store, Cayetano-Jaimes told her sister to have V. come to his room. V. said that Cayetano-Jaimes was lying on the bed and asked her to "lick his private." She said his penis was in her mouth, and she was covered with a blanket. She said she told him she didn't want to do it anymore and left the bedroom when she saw Rodriguez unloading groceries from the car. She didn't remember exactly how old she was. She told an interview specialist that she thought she was eight years old, but at different points during her testimony at trial, she said she was "around six, seven" and "like five, six." She thought the incident occurred a year or year and a half before her mother and Francisco were arrested. She didn't tell anyone about the incident before telling the wife. The wife reported V.'s account to a counselor and to law enforcement.

On October 29, 2009, the State charged Cayetano-Jaimes with one count of child molestation in the first degree. The information alleged that Cayetano-Jaimes committed the offense "[o]n or about and between February 1, 2006 and February 1, 2007." At that time, law enforcement did not know Cayetano-Jaimes's whereabouts.

Law enforcement arrested Cayetano-Jaimes on September 11, 2012. The State amended the information to add one count of identity theft, which it later voluntarily dismissed. In a second amended information filed in November 2012, the State changed the child molestation charge to one count of rape of a child in the first degree. On December 5, 2012, Cayetano-Jaimes filed a notice of the defense of alibi.

The court set trial for March 4, 2013. On February 27, 2013, the State filed a third amended information in which it changed the dates of alleged violation to "[o]n or about and between October 31, 2004 and October 31, 2005." In a CR 8.3(b)[3] motion to dismiss filed February 28, defense counsel told the court that these changes to the dates of violation would require changing "the entire defense strategy." In particular, "[a] potential witness in Mexico will most likely need to be contacted to refute this amendment to the charges."

On March 27, 2013, the trial court heard a defense motion to permit the telephonic testimony of Laura Camacho.[4] Defense counsel argued that because of Camacho's immigration status, the court should allow her to testify by telephone or, alternatively, order her telephonic deposition. Defense argued that

_____

[3] CrR 8.3(b) authorizes the court to "dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."

[4] The motion also asked the court to permit Irene Rodriguez to testify by telephone from New York, but Rodriguez ultimately traveled to Washington and testified in person.

-4-

Camacho's testimony was material: she would testify that she and Francisco never left the girls in the care of Cayetano-Jaimes and Rodriguez.

The court denied the motion for telephonic testimony:

> [T]he right to confront witnesses in person and for the fact finder to be able to see those persons before them, observe their body mannerisms, their responses, and all of the other factors that are important for a jury or a judge to determine credibility are very important factors in any trial, civil or criminal.
>
> I think they become heightened in a criminal case. And certainly the defendant has a constitutional right to confront his or her accusers; I would say that the state has the equal right to make sure the people who are rebutting their potential case are confronted directly in court as well. . . .
>
> . . . .
>
> . . . A voice at the end of a telephone line in a foreign country presents lots of problems in terms of even verifying who the person is, the oath and its meaning to that person in that country, and the ability of the jury to have any idea how to evaluate that person's testimony—these all create major problems, for this Court's thinking.

The court did, however, allow the defense to present Camacho's video deposition or testimony, subject to verification of identity and the ability to cross-examine. The court acknowledged potential difficulties: "I don't know that we even have that capability at this end." And the court expressed some doubt: "I'm not suggesting that these arrangements can be made between now and trial, but I'm only suggesting that would be the only way under which this Court would allow her testimony." Defense counsel told the court, "I suspect that the rulings

about witness testimony might require us to ask for a continuance, just to get all of this set up before we do have a trial."

On May 2, 2013, at a trial confirmation hearing, defense counsel asked for a continuance, citing scheduling and technical problems, as well as difficulties contacting Camacho in Mexico. The State objected, noting the three previous continuances and suggesting that Camacho's testimony was cumulative of other witness testimony. Defense counsel countered that the prosecutor's schedule necessitated one of the continuances and the State's amendment of the dates of violation justified another. And defense counsel reiterated that Camacho, as the mother of the victim, was different from any other defense witness: "[S]he is probably the best person, other than the alleged victim, to be testifying about this."

The trial court denied the motion to continue trial, expressing doubt that a continuance would remedy uncertainties about Camacho's availability and the technical feasibility of arranging her testimony. Trial began May 20, and the State rested on May 21. The jury heard testimony from V., her sister, the wife, and three police officers.

On the morning of May 22, outside the presence of the jury, defense counsel set up her own computer in the courtroom to allow Camacho to testify

via Skype[5] from an internet café in Mexico. The State objected, citing the unclear visual feed and background noise. The State also objected to the use of defense counsel's laptop screen instead of a larger projection screen. Defense counsel told the court that because Camacho did not have personal means to access the Internet, a busy Internet café provided her only option. Defense counsel explained the lack of video projection, stating that the projector in her office "seems to be missing some essential cords, so it doesn't even have a way to connect to a power source. So this is the best that I was able to do was to come up with a monitor."

After a brief examination, the court excluded Camacho's Skype testimony:

I know this was a lot of work, [counsel], but this just isn't sufficient. I can't see the features on her face. I can barely see her face. And then the background noise is such that we're going to have a hard time hearing what she has to say in communicating with her.

I realize that she is an important witness to the defense, and I would like to allow her to testify if it was at all possible. But sitting in the jury box, I can't make out her features. I can't—she's holding the telephone to her—to the side of her face, and the quality of the picture is such that they're not going to be able to judge anything about her testimony by watching her demeanor or any of the other things the jury is supposed to use to evaluate testimony. There [are] just too many problems with this, I'm sorry, but I don't think that we can have it played for the jury under this fashion.

---

[5] Skype is a live video chat and long-distance voice calling service. See, e.g., In re Marriage of Swaka, 179 Wn. App. 549, 551 n.1, 319 P.3d 69 (2014).

Defense counsel then asked to present Camacho's testimony by telephone. The court denied this request:

> All right. I'm not going to allow that either. I think the jury is entitled to evaluate the credibility of the witnesses. It's a really important part of the trial, particularly this trial, because the jury is going to have to decide who to believe here. And they're not going to be able to evaluate Ms. Camacho's testimony using this method, nor are they going to be able to evaluate it over the telephone. I just don't think that's appropriate.

The court permitted counsel to make an offer of proof. At counsel's request, the court administered the oath to Camacho. She identified herself and testified that she was V. and her sister's mother, Cayetano-Jaimes was her brother-in-law, and she never had Cayetano-Jaimes babysit her daughters, either at his house or her own. The jury then returned, and defense counsel called the rest of Cayetano-Jaimes's witnesses, only one of whom was not a family member.

In closing argument, defense counsel reminded the jury, "But we do have testimony from Arturo and from his wife Irene that they never watched those girls, that the girls were never in their care, and that, I submit to you, presents a reasonable doubt that this actually ever happened." In rebuttal, the State attacked the credibility of defense witnesses on several grounds, including, "[T]hey're all Mr. Caetano's family members" and "sometimes families close rank."

The jury returned a verdict of guilty. Cayetano-Jaimes appeals.

## STANDARD OF REVIEW

We review constitutional claims de novo, as questions of law.[6] We review a trial court's decisions admitting or excluding evidence for abuse of discretion.[7] A court abuses its discretion when it makes a manifestly unreasonable decision or bases its decision on untenable grounds or reasons.[8] A court bases its decision on untenable grounds or reasons when the court applies the wrong legal standard or relies on unsupported facts.[9]

## ANALYSIS

Cayetano-Jaimes contends that his constitutional right to present a defense limits a trial court's authority to control the mode of presentation of evidence. Specifically, he contends that the trial court's exclusion of Camacho's telephonic testimony unreasonably restricted his ability to present a defense. We agree. Under the facts of this case, the trial court abused its discretion by excluding the telephonic testimony of this defense witness.

We first review the applicable constitutional principles and court rules. The Fifth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution guarantee that "[n]o person shall be deprived of life,

---

[6] State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010); State v. Jackman, 156 Wn.2d 736, 746, 132 P.3d 136 (2006).
[7] State v. McDonald, 138 Wn.2d 680, 693, 981 P.2d 443 (1999).
[8] In re Det. of Duncan, 167 Wn.2d 398, 402, 219 P.3d 666 (2009).
[9] Duncan, 167 Wn.2d at 403.

liberty, or property, without due process of law." This right to due process includes the right to be heard and to offer testimony.[10] The accused's right to due process "is, in essence, the right to a fair opportunity to defend against the State's accusations."[11] And the right "to call witnesses in one's own behalf [has] long been recognized as essential to due process."[12] "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process."[13]

A criminal defendant's right to present witnesses has limits. A defendant must "at least make some plausible showing of how [a witness's] testimony would have been both material and favorable to his defense."[14] A court does not violate a defendant's constitutional rights when the materiality of an absent witness's testimony is merely speculative or overwhelmed by uncontroverted evidence.[15] Additionally, the defendant's right must yield to "established rules of

---

[10] Rock v. Arkansas, 483 U.S. 44, 51, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987) (quoting In re Oliver, 333 U.S. 257, 273, 68 S. Ct. 499, 92 L. Ed. 682 (1948)).

[11] Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

[12] Chambers, 410 U.S. at 294.

[13] Washington v. Texas, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967).

[14] United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S. Ct. 3440, 73 L. Ed. 2d 1193 (1982).

[15] See United States v. Beyle, 782 F.3d 159, 171-73 (4th Cir. 2015), petition for cert. filed, No. 15-5069 (U.S. July 1, 2013).

procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."[16]

Washington courts have broad authority under ER 611 to control trial proceedings:

> (a) **Control by Court.** The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

In addition, Cayetano-Jaimes relies on CR 43(a)(1), which provides a trial court hearing a civil case the discretion to permit telephonic testimony in some circumstances:

> (a) **Testimony.**
>
> (1) *Generally.* In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise directed by the court or provided by rule or statute. For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location.

"[C]ivil rules by their terms apply only to civil cases."[17] But the civil rules can be instructive in matters of procedure not addressed in the criminal rules.[18] The Superior Court Criminal Rules do not include any provision addressing the admission of telephonic testimony. For this reason, and because the State does

---

[16] State v. Finch, 137 Wn.2d 792, 825, 975 P.2d 967 (1999) (citing Chambers, 410 U.S. at 302).

[17] State v. Hackett, 122 Wn.2d 165, 170, 857 P.2d 1026 (1993).

[18] Hackett, 122 Wn.2d at 170.

not challenge the applicability of CR 43(a)(1), we decide this case assuming that these rules give the trial court discretion to permit testimony by telephone in a criminal case.[19]

Thus, we must decide if, considering the constitutional rights we have identified, the trial court abused that discretion. For guidance, we look to Supreme Court jurisprudence considering the validity of per se rules that impair the right to present a defense.

The constitutional right to present a complete defense limits the "'broad latitude'" the government has to establish rules excluding evidence from criminal trials.[20] A defendant has the right to present relevant evidence, and "'[i]f relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial.'"[21] Evidence rules that "'infring[e] upon a weighty interest of the accused' and are 'arbitrary' or 'disproportionate to the purposes they are designed to serve'" abridge this essential right.[22] Court rules may not prevent a defendant from presenting highly probative evidence

---

[19] State v. McCabe, 161 Wn. App. 781, 789 n.2, 251 P.3d 264 (2011).

[20] Holmes v. South Carolina, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (quoting United States v. Scheffer, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998)).

[21] Jones, 168 Wn.2d at 720 (quoting State v. Darden, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)).

[22] Holmes, 547 U.S. at 324 (alteration in original) (internal quotation marks omitted) (quoting Scheffer, 523 U.S. at 308).

vital to the defense; "'no state interest can be compelling enough to preclude its introduction consistent with the Sixth Amendment and Const. art. I, § 22.'"[23]

The United States Supreme Court has held that per se rules excluding an entire class of testimony may violate a defendant's constitutional right to present a complete defense. Washington v. Texas[24] involved a state statute that prohibited persons charged as principals, accomplices, or accessories in the same crime from testifying on behalf of one another. The Court held that this statute "arbitrarily denied [a defendant] the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense."[25] The Court noted that the Sixth Amendment was designed in part "to make the testimony of a defendant's witnesses admissible on his behalf in court."[26] The fact finder has the responsibility to assess the credibility and weight of the testimony.[27]

In Chambers v. Mississippi,[28] the Court invalidated state hearsay and "voucher" rules because they abridged the defendant's right to present witnesses

---

[23] Jones, 168 Wn.2d at 723-24 (quoting State v. Hudlow, 99 Wn.2d 1, 16, 659 P.2d 514 (1983)).
[24] 388 U.S. 14, 15-16, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967).
[25] Washington, 388 U.S. at 23.
[26] Washington, 388 U.S. at 22.
[27] Washington, 388 U.S. at 22.
[28] 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

in his own defense. The trial court had excluded the testimony of a person who had repeatedly confessed to the murder with which Chambers was charged. The Court reversed Chambers's conviction, holding that state evidence rules that conflict with the right to present witnesses "may not be applied mechanistically to defeat the ends of justice" but must meet "traditional and fundamental standards of due process."[29]

In Rock v. Arkansas,[30] the Court similarly rejected a state rule that categorically excluded hypnotically refreshed testimony. Because this per se rule "had a significant adverse effect on petitioner's ability to testify"[31] to the events at issue, it "infringe[d] impermissibly on the right of a defendant to testify on his own behalf."[32] "A State's legitimate interest in barring unreliable evidence does not extend to per se exclusions that may be reliable in an individual case."[33]

In State v. Jones,[34] the Washington Supreme Court held that the trial court violated the defendant's right to present a defense when it excluded "essential facts of high probative value" related to the circumstances surrounding an alleged rape. The court held that even if the state rape shield statute[35] applied,

---

[29] Chambers, 410 U.S. at 302.
[30] 483 U.S. 44, 62, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987).
[31] Rock, 483 U.S. at 57.
[32] Rock, 483 U.S. at 62.
[33] Rock, 483 U.S. at 61.
[34] 168 Wn.2d 713, 721, 230 P.3d 576 (2010).
[35] RCW 9A.44.020(2).

"it cannot be used to bar evidence of extremely high probative value per the Sixth Amendment."[36]

We view this case as analogous to Washington, Chambers, Rock, and Jones. Like the court rules and state statutes in those cases, the trial court's ruling deprived Cayetano-Jaimes of relevant, material evidence vital to his defense. As in Jones, Camacho's testimony is not "marginally relevant evidence that a court should balance against the State's interest in excluding the evidence."[37] Camacho's testimony, if believed, provided a complete defense to the charged crime. Therefore, "it is evidence of extremely high probative value; it is [the defendant's] entire defense."[38]

In the context of the rape shield statute, the Jones court stated that once a defendant identified highly probative evidence, to justify its exclusion, the State had the burden of showing "the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial."[39] While the Jones court addressed the substantive content of evidence, the permitted mode of presenting evidence implicates the same constitutional rights. Therefore, a similar rule should apply here to the mode of presenting highly probative evidence—when a witness cannot be compelled to appear, the State must show the proposed mode of

[36] Jones, 168 Wn.2d at 723.
[37] Jones, 168 Wn.2d at 721.
[38] Jones, 168 Wn.2d at 721.
[39] Jones, 168 Wn.2d at 720.

presenting the witness's live testimony would disrupt the fairness of the fact-finding process.

The trial court described Ms. Camacho as "an important witness to the defense" and stated that it "would like to allow her to testify if it was at all possible." Although the State expressed reservations about proof of her identity, it did not present any factual basis for questioning Ms. Camacho's identity. If it had any real concerns about identity, it could have requested an opportunity to voir dire Ms. Camacho outside the jury's presence. The State also questioned the validity of an oath sworn by a witness outside of the United States. But the trial court did not base its decision on this concern, and the State does not pursue this issue on appeal. Instead, the trial court excluded Ms. Camacho's testimony because it believed the jury could not evaluate her credibility if it could not see her.

Observations of a witness's demeanor do not provide the only way to evaluate that witness's credibility. At the conclusion of a criminal trial, the court's closing instruction to the jury lists many factors for it to consider:

> You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness. In considering a witness's testimony, you may consider these things: the opportunity of the witness to observe or know the things he or she testifies about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have in the outcome or the issues; any bias or prejudice that the witness may

-16-

have shown; the reasonableness of the witness's statements in the context of all of the other evidence; and any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony.[40]

The State has several ways to challenge a witness's credibility. Cross-examination provides the most direct way. The testimony of other witnesses and exhibits provide other means of challenging credibility. The State has offered no explanation why those avenues of challenge would be insufficient here. Unlike the situation in State v. McCabe,[41] here, the State makes no claim that it wished to cross-examine Camacho with physical evidence. Neither does it question Camacho's unavailability to appear in court.

The State did not show and the trial court did not find that allowing Camacho to testify by telephone was "'so prejudicial as to disrupt the fairness of the fact-finding process at trial.'"[42] The State retained the ability to cross-examine Camacho and the right to "a meaningful assessment of her credibility by the jury."[43]

We recognize that requiring a witness's personal appearance, where feasible, "serves a number of important policies and purposes."[44] But the State

---

[40] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.02, at 14 (3d ed. 2008).
[41] 161 Wn. App. 781, 790, 251 P.3d 264 (2011).
[42] Jones, 168 Wn.2d at 720 (quoting Darden, 145 Wn.2d at 622).
[43] McCabe, 161 Wn. App. at 788.
[44] State ex rel. Children, Youth & Families Dep't v. Anne McD., 128 N.M. 618, 623, 995 P.2d 1060 (N.M. Ct. App. 2000) (witness's personal appearance in court allows fact finder to observe demeanor firsthand, helps establish witness's identity, impresses on witness the seriousness of the occasion, ensures witness

cites no authority supporting the trial court's statement, when it denied the defense's first motion to permit telephonic testimony, that the State has a right to confront witnesses equal to the defendant's Sixth Amendment right. And even a criminal defendant's right to face-to-face confrontation must yield to considerations of public policy and necessities of the case.[45]

In Maryland v. Craig,[46] the Supreme Court established a two-part test for when the confrontation right can be satisfied without a physical, face-to-face-confrontation at trial: (1) the "denial of such confrontation is necessary to further an important public policy" and (2) "the reliability of the testimony is otherwise assured." Under the Sixth Amendment and our state constitution, article I, section 22, "'no state interest can be compelling enough'" to preclude a defendant's presentation of highly probative evidence vital to the defense.[47]

---

is not being coached or referring to documents improperly, and satisfies the right to confrontation where required).

> The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition. Transmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial.

Fed. R. Civ. P. 43 advisory committee's note to 1996 amendment.

[45] Maryland v. Craig, 497 U.S. 836, 849, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990).

[46] 497 U.S. 836, 850, 110 S. Ct. 3157, 111 L. Ed. 2d 666 (1990).

[47] Jones, 168 Wn.2d at 723-24 (quoting Hudlow, 99 Wn.2d at 16).

These constitutional rights satisfy the first prong of the test. We have already addressed the State's ability to test the reliability of Camacho's testimony. Thus, even if the State has a face-to-face confrontation right (which we do not concede), it must yield under the circumstances of this case.

The court abused its discretion when it excluded "essential facts of high probative value whose exclusion effectively barred [the defendant] from presenting his defense"[48] without a showing by the State that allowing Camacho to testify by telephone would disrupt the fairness of the fact-finding process. This deprived Cayetano-Jaimes of the opportunity to present "'testimony [that] would have been *relevant* and *material*, and . . . *vital* to the defense'"[49] and violated his constitutional right to present a complete defense.

Even error of constitutional magnitude may be harmless if, beyond a reasonable doubt, "'any reasonable jury would have reached the same result without the error.'"[50] Here, the jury would have heard important testimony from a person outside Cayetano-Jaimes's immediate family—testimony made more powerful because the witness was the victim's biological mother. Given the other proof issues in the case, this additional evidence could have raised enough

---

[48] Jones, 168 Wn.2d at 721.

[49] Valenzuela-Bernal, 458 U.S. at 867 (alterations in original) (quoting Washington, 388 U.S. at 16).

[50] Jones, 168 Wn.2d at 724 (quoting State v. Smith, 148 Wn.2d 122, 139, 59 P.3d 74 (2002)).

reasonable doubt to cause the jury to reach a different result. We conclude that the trial court's constitutional error was not harmless beyond a reasonable doubt.

In explaining its decision in <u>Chambers</u>, the United States Supreme Court clarified the scope of its holding:

> In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial.[51]

We likewise make no new rule here about the admissibility of telephonic testimony or the trial court's discretion to exclude evidence. And we acknowledge the geographic and technological challenges that affected the trial court's rulings. But we conclude that under the circumstances of this case, the trial court's rulings excluding Camacho's testimony prevented Cayetano-Jaimes from presenting a complete defense and deprived him of a fair trial. We reverse and remand for a new trial. Because our resolution of this issue is dispositive, we do not reach Cayetano-Jaimes's other claims.

CONCLUSION

Because the absence of Camacho's testimony violated Cayetano-Jaimes's constitutional right to present a complete defense, the trial court abused

---

[51] <u>Chambers</u>, 410 U.S. at 302-03.

its discretion by excluding this testimony. And because the State cannot show

this error was harmless, we reverse and remand for a new trial. We do not reach

Cayetano-Jaimes's other claims.

_Leach, J._

WE CONCUR:

_Appelwick, J_          _Cox, J._