**FILED**
**APRIL 20, 2021**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**



IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37206-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACOB NATHANIEL COX, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Jacob Cox appeals his conviction for second degree rape. The incident occurred in the early morning hours at the complaining witness's house after a birthday party. The complaining witness testified that after she fell asleep in her bed, she was awakened by the defendant digitally raping her. The State presented evidence that Mr. Cox's DNA[1] was found on the complaining witness's undergarments.

Mr. Cox denied the accusation entirely and testified that the complaining witness was intoxicated and that he had rejected her advances. He presented expert testimony that it was possible for his DNA to be transferred to the complaining witness's underwear through innocent, non-sexual contact.

---

[1] Deoxyribonucleic Acid.

At trial, the court excluded defense counsel's proffered testimony on several subjects—including testimony that the complaining witness had flirted with Mr. Cox and sat on his lap during the party, that the complaining witness had been kissing other guests at her party, and that Mr. Cox had a positive reputation for sexual morality. Mr. Cox's attorney was also prevented from cross-examining the State's DNA expert on hypotheticals based on the defense witness's opinions.

Mr. Cox appeals, arguing that the trial court's exclusion of this evidence violated his constitutional right to present a defense. We agree and reverse.

**FACTS**

*1. Allegations*

The complaining witness in this case, J.R., threw herself a birthday party with about 40 guests at her residence. Defendant Jacob Cox and J.R. were former college classmates, and Mr. Cox attended the party with his fiancé.

J.R. drank heavily that night. J.R. testified that in the early morning hours, she vomited, and that her friends helped her to bed. When they entered J.R.'s bedroom, Mr. Cox's fiancé was already asleep on the bed. J.R.'s friend undressed her, put J.R. under the covers, and then left the room.

J.R. testified that a short time later, she had the sensation of being in a dream state and having a sex dream with someone touching her. She testified that she felt hands on her backside and a voice in her ear as she started to wake up. She realized Mr. Cox was

speaking to her and heard him say, "J[.R.], I've always wanted to be in your pussy." At the same time, she felt his fingers inside her vagina moving back and forth.

Realizing that it wasn't a dream, she woke with a start, pushed his hand away, and jumped out of bed. She dressed quickly, putting her dress on inside-out, and left the bedroom. As she walked toward the kitchen she told her friends what had just happened. J.R. testified that she was in shock and still very drunk.

J.R.'s friends guided her toward the living room, and one of them started toward the bedroom. J.R. testified that Mr. Cox and his fiancé came down the hallway, walked right by J.R. and her friends without saying a word, and left the house.

Mr. Cox testified at trial and denied ever touching J.R. Instead, he testified that he wandered into J.R.'s bedroom the night of the party and fell asleep next to his fiancé on the bed. No one else was on the bed at the time. A short time later, he was awakened by J.R. laying next to him and touching him around his hips. He told her it was inappropriate and to stop. Mr. Cox testified that this made J.R. angry. She got up off the bed, still wearing her party dress, and stormed out of the room. Mr. Cox woke his fiancé, and they decided to leave. He shook hands with one of J.R.'s friends and said good night.

The next day J.R. texted Mr. Cox, indicating that she was angry with him and wanted to meet with him and his fiancé. J.R. did not articulate why she was angry or what she believed Mr. Cox had done. At trial, she testified that she wanted to discuss the

incident from the previous night and that she wanted his fiancé to be there to hold him accountable without involving the police. When J.R. insisted that Mr. Cox bring his fiancé, Mr. Cox texted back, "please J[.R.]." The next day Mr. Cox texted J.R. saying that he and his fiancé had made a joint decision not to meet her because they believed they had been "roofied" at the party. She texted back, calling him "dishonorable," and then went with her father to the police station.

The police collected J.R.'s undergarment from her home, and J.R. went to the hospital to have a rape kit performed. A few days later, Mr. Cox was contacted by police and agreed to give an interview and provide a DNA sample. Mr. Cox denied assaulting J.R. and claimed that he was awakened by J.R. fondling him over his clothing. He told her to stop, and she got up and left the bedroom.

Mr. Cox was charged with second degree rape after the crime lab found J.R. and Mr. Cox's DNA on J.R.'s undergarments. No DNA was found on J.R.'s body, although J.R. testified that she had showered before the hospital examination.

## 2. *Evidentiary Rulings*

Mr. Cox maintained his theory of defense at trial. Before trial, the State moved in limine to exclude any evidence of past sexual behavior under the "Rape Shield Statute," RCW 9A.44.020. Mr. Cox argued that he should be able to introduce testimony that on the night of the party, before the alleged incident, J.R. was drunk and flirtatious with

other people, kissing other women and encouraging Mr. Cox to kiss another male. The court granted the State's motion to exclude any such testimony.

During trial, Mr. Cox proffered testimony that in addition to being flirtatious with other people at the party, J.R. was flirting with Mr. Cox. At one point, she told Mr. Cox: "If I were into dudes, you would be my number one pick." She then turned to another female and said, "If I were into girls, you would be my number one choice pick." Later that evening, J.R. sat on Mr. Cox's lap in a party dress and leaned her head on his shoulder.

Mr. Cox argued that this evidence was relevant for two reasons. First, it provided an innocent explanation for how his DNA was found on J.R.'s underwear. In addition, since J.R. did not remember the incident, but it was corroborated by other witnesses, it was evidence that J.R. was so intoxicated that she was acting out of character and could not recall her actions the night of the party. The court excluded the evidence as prohibited by the Rape Shield Statute, irrelevant and prejudicial.

The jury found Mr. Cox guilty. After his motion for a new trial was denied, Mr. Cox filed this appeal.

## ANALYSIS

*1. Evidence of the victim's behavior on the night of the incident.*

On appeal, Mr. Cox argues that his constitutional right to present his theory of the case was violated by the court's orders, excluding evidence. Challenges to evidentiary

rulings under the Evidence Rules are generally reviewed for abuse of discretion. *State v. Orn*, No. 98056-0 (Wash. Mar. 18, 2021), http://www.courts.wa.gov/opinions/pdf/980560.pdf. A court abuses its discretion when it applies the wrong legal standard or bases its decision on an erroneous application of the law. *Id.* On the other hand, we review de novo evidentiary challenges that raise constitutional issues. *Id.* A court misconstrues the law, and therefore abuses its discretion, when its evidentiary ruling violates a defendant's constitutional right. *Id.*

Mr. Cox appeals the trial court's exclusion of evidence that J.R. was acting uncharacteristically flirtatious toward himself and others at the party on the evening of the incident. He argues that the evidence was relevant to show that J.R.'s intoxication made her act out of character and affected her memory. He contends that evidence of the lap-sitting incident provides an innocent explanation for DNA transfer and supports his theory that J.R. initiated contact with him in the bedroom.

The trial court found the lap-sitting evidence to be "marginally relevant," although speculative and highly prejudicial. It found the remaining evidence to be irrelevant and highly prejudicial. It excluded all of the evidence under the Rape Shield Statute.

We turn first to the trial court's application of the Rape Shield Statute. The Rape Shield Statute, RCW 9A.44.020, prohibits a defendant from introducing evidence of "past sexual behavior" to impeach the victim or prove consent. The purpose of the statute was to redefine relevant evidence in sexual assault cases and "erase the

misogynistic and antiquated notion that a woman's past sexual behavior somehow affected her credibility." *State v. Jones*, 168 Wn.2d 713, 722-23, 230 P.3d 576 (2010). A trial court's decision to exclude evidence under the Rape Shield Statute is initially reviewed for abuse of discretion. *State v. Harris*, 97 Wn. App. 865, 869, 989 P.2d 553 (1999).

On Appeal, Mr. Cox argues that the Rape Shield Statute does not apply to the flirtatious evidence that he proffered at trial because it does not qualify as "past sexual behavior." We agree. "The language of the statute states unequivocally that evidence of the victim's 'past sexual behavior' is 'inadmissible to prove the victim's consent.'" *Jones*, 168 Wn.2d at 722 (quoting RCW 9A.44.020(2)). Any reading of the statute that conflates "past" with "present" conduct is tortured. *Id.* at 722-23. The excluded evidence in this case was not past behavior; it was contemporaneous with the alleged rape. Nor was it being introduced to show consent. And while it was being introduced to discredit the victim's credibility, the focus was on her level of intoxication, not on allegations of promiscuity. Thus, application of the Rape Shield Statute in these circumstances was untenable and an abuse of discretion.

In addition to the Rape Shield Statute, the trial court also excluded the evidence as irrelevant under ER 401 and highly prejudicial under ER 403. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." ER 401. In other words, evidence is relevant when it is material and probative.

At trial and on appeal, Mr. Cox argues that the flirtatious behavior is relevant to show that J.R. was not only intoxicated but that her intoxication affected how she behaved and her memory of that night. He relies on *State v. Sheets*, 128 Wn. App. 149, 115 P.3d 1004 (2005). *Sheets* was also a rape trial. After a witness testified that he knew the victim was intoxicated because she was acting "uncharacteristically flirtatious," the court granted a mistrial, believing the statement was barred by the Rape Shield Statute. *Id*. at 156. On appeal, this court held that the Rape Shield Statute did not bar the comment because it was not past sexual behavior (indeed, it may not be sexual behavior at all), its prejudicial impact was low, but its probative value to the defendant was high. *Id*. at 157.

In this case, the State argues that Mr. Cox's justification for the evidence is different on appeal than it was at trial. But defense counsel clearly argued that the flirtatious behavior was evidence of intoxication, uncharacteristic behavior, and relevant to his theory of the case. Moreover, the State makes no attempt to distinguish *Sheets* on appeal.

The State also asserts that the lap-sitting incident is irrelevant because there was no evidence that DNA could be innocently transferred under these circumstances. Thus, the State argues, this theory is unsupported by the evidence and speculative. This is a

8

circular argument. Mr. Cox was not allowed to bring in any evidence of the lap-sitting incident or ask his expert if innocent transfer were possible under these circumstances. If, as the State claims, this defense theory is weak, then let it fail under effective cross-examination. *See State v. Duarte Vela*, 200 Wn. App. 306, 321, 402 P.3d 281 (2017) ("For these reasons, the trial court should admit probative evidence, even if suspect, and allow it to be tested by cross-examination. In this manner, the jury will retain its role as the trier of fact, and *it* will determine whether the evidence is weak or false."). The evidence of J.R.'s intoxication and flirtatious behavior was highly probative to the defense theory of the case.

Finally, the trial court excluded the evidence of flirtatious behavior and lap-sitting as highly prejudicial under ER 403. The State argues that there was already sufficient evidence to show that J.R. was intoxicated, so this evidence was unnecessary and redundant. We disagree. Notably, "the ER 403 balancing of probative value versus unfair prejudice is weighed differently when the defense seeks to admit evidence that is central to its defense." *State v. Duarte Vela*, 200 Wn. App. at 320. More specifically, ER 403 should not be used to exclude evidence that is crucial to a valid defense. *Id.* The prejudicial effect of this evidence was low in comparison to the highly probative value of the evidence to Mr. Cox.

Having decided that the court abused its discretion by excluding the evidence, we next consider whether the exclusion was harmless or whether it violated Mr. Cox's

constitutional right to present a defense. Because there are constitutional rights

implicated, our review of this second step is de novo. *Jones*, 168 Wn.2d at 719.

The constitutional right to present a defense was thoroughly set forth in *Jones*.

"'The right of an accused in a criminal trial to due process is, in essence, the right to a

fair opportunity to defend against the State's accusations.'" *Jones*, 168 Wn.2d at 720

(quoting *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297

(1973)). Under a constitutional analysis, if a defendant's proposed evidence is relevant, it

will be admitted unless the State can show that it is "so prejudicial as to disrupt the

fairness of the fact-finding process." *Id*. Even then, the State's interest in excluding

prejudicial evidence must also be weighed against the defendant's need for the sought-

after information. *Id*. If evidence is of "high probative value . . . 'no state interest can be

compelling enough to preclude its introduction.'" *Id*.

In *Jones*, the defendant was charged with second degree rape of his niece. His

theory of defense was consent during a wild sex party fueled by drugs and alcohol. The

trial court held that the Rape Shield Statute precluded the defendant from testifying or

cross-examining the victim about his version of the events. As the Supreme Court noted,

"[t]his is not marginally relevant evidence that a court should balance against the State's

interest in excluding the evidence. Instead, it is evidence of extremely high probative

value; it is Jones's entire defense." *Id.* at 721.

10

In this case, the crux of Mr. Cox's defense was that Mr. Cox did not touch J.R., but rather rejected her advances. He attempted to submit evidence that his DNA was transferred to the victim's underwear through non-sexual contact sometime during the night. While the trial court allowed the defense expert to testify about the possibility of transfer DNA, the court precluded evidence that may have demonstrated actual DNA transfer. Thus, as the State asserted in closing, Mr. Cox could not explain why his DNA was found on the victim's undergarment.

On appeal, the State makes no attempt to show that the excluded evidence was "so prejudicial as to disrupt the fairness of the fact-finding process." *Id*. Instead, the State argues that the holding in *Jones* is limited to the defense of consent. Since Mr. Cox did not raise consent as a defense, *Jones* does not apply. The State's interpretation of *Jones* is too narrow.

While the defense in *Jones* was consent, the court was concerned with protecting the defendant's right to present his theory of the case, through direct and cross-examination, regardless of the nature of the defense. Nothing in *Jones* suggests that its holding is limited to the defense of consent in rape cases. *See State v. Duarte Vela*, 200 Wn. App. 306 (*Jones* analysis applied to evidence of self-defense in an assault case); *State v. Cayetano-Jaimes*, 190 Wn. App. 286, 359 P.3d 919 (2015) (under *Jones*, trial court erred in prohibiting important defense witnesses from testifying by telephone);

*State v. Ward*, 8 Wn. App. 2d 365, 438 P.3d 588 (2019) (*Jones* holding applied to exclusion of necessity defense in burglary case).

Evidence that the victim was highly intoxicated, acting in a manner that was uncharacteristically flirtatious, and sitting on Mr. Cox's lap in a dress, was "highly relevant" to his theory of the defense. The prejudicial value of this evidence, if any, was low.

Having found that excluding evidence of the complaining witness's behavior on the night of the incident violated Mr. Cox's constitutional right to present his theory of defense, we turn to whether the error was nonetheless harmless. *See Orn*, slip op. at 18. "An error is harmless and not grounds for reversal if the appellate court is assured beyond a reasonable doubt that the jury would have reached the same verdict without the error." *State v. Romero-Ochoa*, 193 Wn.2d 341, 347, 440 P.3d 994 (2019).

In this case, it cannot be said that the error was harmless. The lap-sitting incident provides an explanation as to how Mr. Cox's DNA might have been transferred to the complaining witness. The witness's inability to recall this incident calls into question her ability to remember other events from that night. And her flirtatious behavior with Mr. Cox supports his version of events. We conclude that the constitutional error in excluding the evidence was not harmless, and reverse and remand for a new trial.

2. *Expert Testimony*

Mr. Cox raises several additional issues on appeal. Two of these issues are likely to occur on retrial, and have been fully briefed by the parties, so we exercise our discretion to address them. *See Philadelphia II v. Gregoire*, 128 Wn.2d 707, 716, 911 P.2d 389 (1996).

Mr. Cox argues that the court erred by prohibiting certain questions of the State's expert on cross-examination. When defense counsel attempted to ask the State's DNA expert a hypothetical question based on the defense expert's opposing opinion, the trial court sustained the State's objection. We review the evidentiary ruling for abuse of discretion. *State v. Arndt*, 194 Wn.2d 784, 799, 453 P.3d 696 (2019).

The State called Mr. Culnane a forensic expert from the Washington State Patrol. Mr. Culnane testified that he tested two cuttings from the edges of J.R.'s underwear crotch for DNA. One cutting contained J.R.'s DNA and a trace from an unidentified source. The second cutting contained J.R.'s DNA, a secondary DNA identified as Mr. Cox, and trace of a third contributor.

Later, in his case in chief, Mr. Cox introduced evidence to support his theory that his DNA appeared on J.R.'s underwear through primary or secondary transfer. Mr. Cox called his own forensic expert, Suzanna Ryan. She testified that primary transfer of DNA occurs when you touch something or someone in any way, such as a handshake or a hug.

Secondary transfer occurs when the DNA is transferred a second time, such as when you shake a person's hand, and that person picks up a pen.

The State's expert, Mr. Culnane, testified that based on his analysis of the trace DNA found on J.R.'s underwear, it was too small to identify as either male or female. During cross-examination, defense counsel asked Mr. Culnane to assume that his analysis of the trace DNA was wrong and that the proffered opinion of Ms. Ryan was correct. "If in fact they are not artifacts, if they are not the product or the result of stutter, you would agree then there was an indication there were at least males present in that sample, correct?" Report of Proceedings (RP) at 694. The State objected, claiming that the hypothetical was speculative and was "getting awfully close to rape shield issues." RP at 695.

Mr. Culnane had already given his opinion that the trace components could not be assigned to a male or female. In an offer of proof, defense counsel countered that the defense expert disagreed with Mr. Culnane's opinion. The presence of other male DNA would support his theory of innocent DNA transfer. The trial court sustained the State's objection.

Later, during the defense's case in chief, the State moved to exclude any testimony by the defense expert, Ms. Ryan, opining that the trace DNA found on J.R.'s underwear may be that of a third male. Defense counsel argued that his expert analyzed the same DNA evidence and reached a different opinion than the State's expert. Ms. Ryan would

testify that in her opinion, there was a likelihood that the unknown trace DNA was that of another male. This was not being introduced to show bad character but rather to show that DNA could be innocently transferred to J.R.'s underwear without sexual contact. The trial court allowed this testimony. On appeal, Mr. Cox argues that the trial court erred in prohibiting him from cross-examining the State's expert.

It has long been recognized that expert witnesses, by nature, are different from fact witnesses. While theories propounded on direct examination should be based on facts already established, such is not the case for cross-examination. On the contrary, an expert witness may be cross-examined with hypotheticals yet unsupported by the evidence that go to the opponent's theory of the case. *Levine v. Barry*, 114 Wash. 623, 627, 195 P. 1003 (1921).

The State argues that defense counsel's question was inappropriate because counsel was asking the expert witness to assume his own testimony was not true. The State's characterization is correct. But such is fair game on cross-examination of an expert witness. Here, defense counsel was asking the State's expert whether his conclusion would be different if his analysis were different.

The State also argues that suggesting the presence of third-party male DNA in J.R.'s underwear violates the Rape Shield Statute. This would be true if Mr. Cox were attempting to argue that the DNA came from sexual contact with another male, and this sexual contact affected her credibility as a witness in this case. But Mr. Cox was not

arguing that the DNA was evidence of sexual contact with a third male. Instead, he was attempting to use this third source DNA to show that DNA could be transferred through innocent, i.e., non-sexual contact.

In this case, the trial court abused its discretion by excluding the cross-examination of the State's expert witness.

### 3. *Reputation Evidence on Sexual Morality*

Mr. Cox argues that the trial court erred in excluding evidence that Mr. Cox had a good reputation for sexual morality. At trial, he proffered the testimony of four witnesses who would testify to this reputation. These people were present or former co-workers and friends of Mr. Cox. The State argued that the evidence should be excluded because Mr. Cox could not lay an adequate foundation for the testimony. While each witness could testify that they never heard anything negative about his sexual morality, none of them had any actual knowledge of the same. The trial court agreed with the State and excluded the evidence.

Generally speaking, character evidence is not relevant. ER 404(a). As an exception, however, criminal defendants may offer "[e]vidence of a pertinent trait of [his] character." ER 404(a)(1). The method for proving a character trait is by reputation. ER 405(a).

16

Across the country, and even within Washington State, courts are divided on whether a defendant's proffered reputation testimony of good sexual morality is relevant to sex-crime charges. *See Vigna v. State*, 470 Md. 418, 235 A.3d 937 (2020) (thorough review of cases across the country, including Washington and Idaho). The minority opinion, adopted by Division One of the Court of Appeals, holds that reputation evidence of sexual morality is not pertinent to whether the defendant committed a sex offense, reasoning that:

> The crimes of indecent liberties and incest concern sexual activity, which is normally an intimate, private affair not known to the community. One's reputation for sexual activity, or lack thereof, may have no correlation to one's actual sexual conduct. Simply put, one's reputation for moral decency is not pertinent to whether one has committed indecent liberties or incest.

*State v. Jackson*, 46 Wn. App. 360, 365, 730 P.2d 1361 (1986).

The majority position across the country, and adopted by Division Three, holds that reputation evidence of good sexual morality is pertinent to a sex crime charge, so long as the defendant can lay the proper foundation. *State v. Griswold*, 98 Wn. App. 817, 991 P.2d 657 (2000), *abrogated on other grounds by State v. DeVincentis*, 150 Wn.2d 11, 74 P.3d 119 (2003). In *Griswold*, this court rejected a categorical exclusion of reputation evidence on the trait of sexual morality but found that the defendant had failed to lay a proper foundation to introduce such testimony. The court held that the evidence offered cannot be general character evidence but must be narrowed to a pertinent character trait,

such as sexual morality. *Id*. at 829. Once narrowed, the defendant has the burden to show the specific nature of the evidence and create a record for review. *Id*.

In this case, defense counsel identified the specific character trait—sexual morality—that he was attempting to prove. In an offer of proof, he called four witnesses who testified that they had known Mr. Cox for a significant period of time, they had many friends in common within the community, and had never heard anything bad about his sexual morality. The trial court excluded the evidence on the grounds that character evidence of "this type" is generally inadmissible, the term sexual morality was too amorphous, and counsel had failed to establish a proper foundation. On appeal, the State argues that Mr. Cox failed to set an adequate foundation, arguing that each proffered witness provided conclusory testimony using a negative inference.

Contrary to the trial court's position, "this type" of evidence is explicitly admissible under ER 404(a)(1). *Griswold* makes it clear that there is no categorical exclusion of reputation evidence of sexual morality, even if the term is not well-defined.

The State also contends that Mr. Cox failed to establish a proper foundation. In support of its position, the State essentially posits that the absence of evidence is not evidence of absence. To prove relevance, however, the proponent of evidence needs to show probability, not absolute certainty. As Mr. Cox points out in his opening brief, courts have long recognized that one method of proving a positive reputation is by negative inference—the absence of bad information. *State v. Underwood*, 35 Wash. 558,

572, 77 P. 863 (1904). The State does not cite any authority for its position, nor does it attempt to distinguish the holding in *Underwood*.

Finally, the State argues that Mr. Cox failed to set a proper foundation because each witness's proffered testimony was conclusory. This, however, is exactly what the rules require; that character evidence be proved through reputation, not specific instances of conduct. ER 405(a). Once introduced by reputation, the State is free to cross-examine the witnesses on specific instances of misconduct, the depth of their knowledge, and the factual basis for their knowledge. Indeed such cross-examination tends to be very effective at reducing the persuasive value of reputation evidence. But this information goes to weight, not admissibility.

In this case, the trial court's exclusion of reputation evidence on a particular character trait was based on untenable grounds and was an abuse of discretion.

Mr. Cox raises several additional issues on appeal related to trial practice. Since we reverse on these grounds, we decline to address these additional issues.

Reversed and remanded for a new trial.

_____
Staab, J.

WE CONCUR:

_____ _____
Fearing, J.           Siddoway, A.C.J.