IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84763-5-I |
| Respondent, | DIVISION ONE |
| v. | |
| ROBERT R D CALLIOUX, | UNPUBLISHED OPINION |
| Appellant. | |

SMITH, C.J. — Robert Callioux appeals his convictions of one count of rape of a child in the first degree and two counts of child molestation in the first degree for abusing his daughter, M.R.Y. He argues the trial court committed evidentiary error and deprived him of his right to present a defense by ruling *in limine* that the State could cross-examine one of Callioux's potential witnesses, D.C., about specific instances of dishonesty if she were to testify. He also argues that his trial counsel was ineffective for not calling D.C. to testify.

Because D.C. did not testify, Callioux's claim of evidentiary error is not reviewable. Also, Callioux fails to establish that the trial court's *in limine* ruling deprived him of his right to present his defense or that his trial counsel's performance was deficient. Accordingly, we affirm.

FACTS

In July 2019, M.R.Y., who was then 16 years old, disclosed that her father, Callioux, had sexually abused her when she was a child. M.R.Y. later testified

that the abuse began when she was four or five years old and stopped when she was about nine-and-a-half years old. M.R.Y., who resided primarily with her mother, recalled that the abuse would occur at night in Callioux's bedroom during M.R.Y.'s alternating weekend visitations to Callioux's apartment.

The State charged Callioux with one count of rape of a child in the first degree and two counts of child molestation in the first degree. It later moved *in limine* to cross-examine one of Callioux's potential witnesses, D.C., about specific instances of dishonesty, which were the subject of pending charges for theft, false statements, and false reporting, if D.C. were to testify. According to the State's motion, D.C., who is M.R.Y.'s cousin and Callioux's niece, "purport[ed] to have been at [Callioux's] home *every weekend* [M.R.Y.] was there" and "state[d] that because she was present every weekend [M.R.Y.] was present that [Callioux] could not possibly have sexually abused [M.R.Y.]" It asserted that D.C.'s credibility was "important and at issue," that the State should be allowed to cross-examine her "about her instances of dishonesty pending currently in the courts," and that those instances were "highly relevant . . . and more probative than prejudicial."

Callioux objected, arguing through counsel that "on pending cases that have not been adjudicated, we would suggest that they're not appropriate for specific instances and use by the State." The trial court disagreed and granted the State's motion, stating, "I think these are examples of instances of evidence that would fall under [ER] 608."

2

At trial, Callioux did not call D.C. to testify. M.R.Y. testified that although her cousins would come over to Callioux's apartment occasionally during the years that he was abusing her, they did not come over every weekend that she visited Callioux. Meanwhile, one of Callioux's sisters testified that she could verify that M.R.Y. was never alone with Callioux during any of the times M.R.Y. visited him. Another of his sisters—D.C.'s mother—testified that D.C. was with M.R.Y. every weekend, including overnights, that M.R.Y. visited Callioux.

The jury found Callioux guilty as charged. Callioux appeals.

ANALYSIS

ER 608 Ruling

ER 608 provides, as relevant here, that specific instances of a witness's conduct "may . . . in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness . . . concerning the witness' character for truthfulness or untruthfulness." ER 608(b). ER 608 is subject to the overriding protections of ER 403, which gives the trial court discretion to exclude evidence if its probative value is outweighed by the danger of unfair prejudice. State v. Wilson, 60 Wn. App. 887, 893, 808 P.2d 754 (1991). Callioux contends that the trial court abused its discretion by ruling that if D.C. testified, the State could cross-examine her about her pending criminal charges for theft, false statements, and false reporting. We hold that because D.C. did not testify, the trial court's ruling is not reviewable.

State v. Kimp, 87 Wn. App. 281, 941 P.2d 714 (1997), is instructive. In Kimp, the State moved under ER 608(b) to cross-examine a witness—there, the

3

defendant—about her alleged unauthorized use of a credit card if she testified. 87 Wn. App. at 282. The trial court ruled *in limine* that the prosecutor could question the defendant about whether she told the police about the incident, wherein she allegedly took her supervisor's credit card without permission and used it in several stores, signing her supervisor's name. Id. The defendant stated that she was not going to testify because of the trial court's ruling. Id. She also made an offer of proof claiming that she would have testified, with regard to the assaults that were the subject of her trial, that she did not hit one of the victims and that she struck the other in self defense. Id. at 282-83.

The defendant was convicted of assault, and on appeal, she challenged the trial court's ER 608 ruling. Id. at 283. We held that because the defendant did not testify, the trial court's ruling was not reviewable. Id. at 284-85. We observed that, as noted above, "in order to admit ER 608 evidence, the court must balance the probative value of the conduct against the danger of undue prejudice." Id. at 284. And "[t]o evaluate the danger of undue prejudice posed by prior misconduct evidence, the trial court needs to consider the substance of the witness' testimony." Id. "Similarly, to evaluate the trial court's decision, the appellate court needs to review both the witness' testimony and the impeaching evidence," and "there cannot be any meaningful review of a[n] ER 608(b) claim unless the witness has testified." Id. We noted, additionally, that "the failure of the defendant to testify renders any harm flowing from the ruling totally speculative because it would be uncertain whether the impeaching evidence

4

would even be offered." Id. (citing Luce v. United States, 469 U.S. 38, 41, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984)).

Here, as in Kimp, the fact that D.C. did not testify renders any harm flowing from the trial court's *in limine* ruling entirely speculative. Without D.C.'s testimony, we cannot know how her cross-examination would have played out. For example, and as the parties' disagreement on this point highlights, the record is unclear about whether the State intended to ask D.C. whether she had been charged with certain offenses, as distinct from inquiring about the underlying conduct. To this end, the State suggested below that the precise nature of its cross-examination could be discussed at a later time "in terms of what's appropriate and doesn't make it more prejudicial than necessary." It is entirely possible that, depending on the State's actual line of questioning, Callioux would have renewed his objection and the trial court would have revised its ruling or directed the State to ask only specific questions after balancing the probative value of D.C.'s alleged conduct against the potential for unfair prejudice. Cf. Minehart v. Morning Star Boys Ranch, Inc., 156 Wn. App. 457, 466, 232 P.3d 591 (2010) (observing that motions *in limine* "often are tentative and subject to change at trial"). It is also possible that the State would elect not to question D.C. about her pending charges and instead rely solely on two prior theft convictions, which Callioux agreed were admissible, to call D.C.'s credibility into question. As in Kimp, we cannot meaningfully evaluate the trial court's ruling in view of D.C.'s actual testimony. Thus, as in Kimp, we do not review Callioux's claim of evidentiary error.

Callioux contends Kimp was wrongly decided because it failed to consider State v. Ray, 116 Wn.2d 531, 806 P.2d 1220 (1991). Ray involved a trial court ruling excluding exculpatory evidence. 116 Wn.2d at 543. Under ER 103(a)(2), to preserve error predicated on such a ruling, "the substance of the evidence [must be] made known to the court by offer or [be] apparent from the context within which questions were asked." The Ray court held that although the defendant did not make a formal offer of proof about the witness's anticipated testimony, no formal offer was necessary "because the colloquy of the parties and the court, on the record, revealed the substance of the proposed testimony." 116 Wn.2d at 539. Callioux argues that similarly, here, D.C.'s testimony that she was at Callioux's home each weekend that M.R.Y. was there "was known to both parties, and to the trial court to a degree sufficient to allow review."

But Callioux focuses on the wrong aspect of D.C.'s would-be testimony. The trial court here did not, as the trial court did in Ray, exclude any of D.C.'s anticipated *exculpatory* testimony. Instead, it ruled that if Callioux were to elicit that testimony, the State would be allowed to cross-examine D.C. about her character for truthfulness by asking her about specific instances of conduct. It is the unknown nature of that cross-examination—not of D.C.'s testimony about her presence at Callioux's home—that makes Callioux's claim of error unreviewable. Ray does not control.[1]

---

[1] In his reply brief, Callioux urges us to adopt the reasoning of a North Carolina case, State v. Lamb, wherein the trial court denied the defendant's motion in a murder trial to prevent the prosecutor from questioning her about her alleged involvement in other killings. 321 N.C. 633, 636, 365 S.E.2d 600 (1988). But the Lamb court "express[ed] no opinion" on whether the defendant's decision

<u>Right to Present a Defense</u>

Callioux also argues that the trial court's ruling *in limine* deprived him of his right to present a defense. In support, Callioux relies on <u>State v. Broussard</u>, 25 Wn. App. 2d 781, 525 P.3d 615 (2023), <u>State v. Chicas Carballo</u>, 17 Wn. App. 2d 337, 486 P.3d 142 (2021), <u>State v. Cox</u>, 17 Wn. App. 2d 178, 484 P.3d 529 (2021), <u>State v. Orn</u>, 197 Wn.2d 343, 482 P.3d 913 (2021), <u>State v. Cayetano-Jaimes</u>, 190 Wn. App. 286, 359 P.3d 919 (2015), and <u>State v. Jones</u>, 168 Wn.2d 713, 230 P.3d 576 (2010). But each of these cases involved a ruling that excluded or prevented the defense from eliciting certain testimony. <u>See</u> <u>Broussard</u>, 25 Wn. App. 2d at 785; <u>Chicas Carballo</u>, 17 Wn. App. 2d 345; <u>Cox</u>, 17 Wn. App. 2d at 185; <u>Orn</u>, 197 Wn.2d at 351-52; <u>Cayetano-Jaimes</u>, 190 Wn. App. at 303-04; <u>Jones</u>, 168 Wn.2d at 717-18. Here, by contrast, the trial court's ruling did not exclude any of D.C.'s testimony or prevent Callioux from eliciting that D.C. was with M.R.Y. every weekend that M.R.Y. was with Callioux. As much as Callioux urges us to treat the trial court's ruling here as a "constructive" exclusion of D.C.'s testimony, it was not. <u>Cf.</u> <u>Cayetano-Jaimes</u>, 190 Wn. App. at 302, 304 (characterizing as exclusionary the denial of a motion to allow

---

not to testify rendered the trial court's ruling unreviewable, instead granting the defendant a new trial where it was "abundantly clear from the record . . . that defendant intended to testify unless her motion *in limine* was denied" and the evidence at issue was inadmissible under ER 608(b) because it "show[ed] specific instances of conduct relating to violence against other persons" and, thus, was "irrelevant to defendant's veracity." <u>Lamb</u>, 321 N.C. at 646-48. Here, Callioux does not point to anything in the record to show that D.C. would have testified if not for the trial court's ruling, and it is undisputed that D.C.'s at-issue conduct was probative of her veracity. Not only is <u>Lamb</u> not binding, it is readily distinguishable.

telephonic testimony where there was no dispute about the witness's unavailability to appear in court). Callioux fails to show that the trial court's ruling deprived him of his right to present a defense.

Ineffective Assistance of Counsel

Finally, Callioux argues that his trial counsel was ineffective. We disagree.

The Sixth Amendment to the United States Constitution and article 1, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). To prevail on a claim of ineffective assistance, a defendant must establish that (1) his attorney's performance was deficient and (2) the deficiency prejudiced him. State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "Because both prongs of the ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end our inquiry." State v. Johnson, 12 Wn. App. 2d 201, 210, 460 P.3d 1091 (2020).

Here, Callioux argues that his trial counsel was ineffective for not calling D.C. as a witness. "To prevail on an ineffective assistance claim, a defendant . . . must overcome 'a strong presumption that counsel's performance was reasonable.' " State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting Kyllo, 166 Wn.2d at 862). "A decision not to call a witness is a matter of trial tactics that generally will not support a claim of ineffective assistance of counsel." State v. Krause, 82 Wn. App. 688, 697-98, 919 P.2d 123 (1996). But "a criminal defendant can rebut the presumption of reasonable performance by

8

demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.' " Grier, 171 Wn.2d at 33 (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

Callioux does not rebut the presumption that counsel's decision not to call D.C. as a witness was a reasonable one. As Callioux himself acknowledges, the record does not reveal why defense counsel did not call D.C. to the stand. And "we will not presume deficient performance from a silent record." State v. Heng, 22 Wn. App. 2d 717, 744, 512 P.3d 942 (2022), review granted in part, 200 Wn.2d 1025 (2023). Although Callioux asserts that "[t]here was no downside to presenting [D.C.'s] testimony," we cannot know that from this record. As the State points out, it is conceivable that counsel reasonably determined that D.C. would not present as credible. It is also conceivable that defense counsel had reason to believe D.C.'s recollection about her weekends with M.R.Y. was not as unwavering as Callioux represents it would have been.[2] In either case, it is further conceivable that defense counsel reasonably believed putting D.C. on the stand would undermine D.C.'s mother's and aunt's testimony in that regard. On this record, Callioux does not rule out conceivable tactical reasons to explain counsel's decision. Consequently, his ineffective assistance claim fails. Cf. State v. Linville, 191 Wn.2d 513, 525, 423 P.3d 842 (2018) (ineffective assistance claim failed where record was silent as to counsel's reasons for not

---

[2] We note that the record does not include a sworn statement or testimony from D.C., and that according to the certification of probable cause, D.C. stated during her interview that "she would *pretty much* spend the night with [M.R.Y.] *almost* every other weekend when [M.R.Y.] was with [Callioux]." (Emphasis added.)

9

objecting and, thus, it was impossible to tell whether any hypothesis as to counsel's reasons was correct).

Callioux cites a number of cases in support of reversal but they each involved counsel's *uninformed* decision not to call a witness or, in one case, a decision that was unreasonable because it was based on an actual conflict of interest. See State v. Jones, 183 Wn.2d 327, 345, 352 P.3d 776 (2015) (counsel failed to interview clearly identified and accessible witnesses); State v. Robinson, 79 Wn. App. 386, 399, 902 P.2d 652 (1995) (counsel decided not to call a witness, whom he also represented, due to an actual conflict of interest); State v. Thomas, 109 Wn.2d 222, 230-31, 743 P.2d 816 (1987) (counsel failed to investigate his own expert's qualifications, which investigation would have revealed were lacking); State v. Byrd, 30 Wn. App. 794, 799, 638 P.2d 601 (1981) (counsel failed to interview a witness); State v. Jury, 19 Wn. App. 256, 264, 576 P.2d 1302 (1978) (counsel "made virtually no factual investigation" and "admit[ted] he was unprepared for trial"). Callioux does not show that counsel's decision not to call D.C. was uninformed or the result of a conflict of interest.

We affirm.

_____
Smith, C.J.

WE CONCUR:

_____    _____
Díaz, J.                                        Bremm, J