(May 13, 2003)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT E. LOJA, Appellant. [761 NYS2d 7] —Judgment, Supreme Court, New York County (John Stackhouse, J.), rendered February 14, 2000, convicting defendant, after a jury trial, of attempted rape in the first degree and sentencing him to a term of $2^{1}/_{4}$ to $4^{1}/_{2}$ years, unanimously reversed, on the law, and the matter remanded for a new trial.

The complainant had a close relationship with defendant on the basis of friendship, employment and close familial ties. She worked as a pastry chef in the same restaurant where defendant was employed. She described him as very trustworthy and respectful, but denied having had any romantic interest in, or involvement with, him. The nature of their relationship is central to the defense. On the Sunday morning in question, she claims she arose at 3:30 A.M. to go to work, claiming the

need to be unusually early because an exterminator was expected that day in the restaurant. Her ex-husband, with whom she now resided after her separation from her present husband, was too drunk to drive her to work. She telephoned defendant, who was not scheduled to work that day, to drive her. He picked her up and they arrived at the restaurant at 4:40 A.M. The complainant testified that upon arriving, they went to the basement to do laundry. Around 5:30 A.M., a coworker, Silvano Patricio, called to indicate that he would be arriving soon. The complainant testified that while she sorted clothes in the basement, defendant "hugged" her from the back and held up a butter knife, which she assumed was a joke within the context of a game that they played in the past. He dropped the knife and hugged her again, said he liked her and that she "was going to be his willingly or unwillingly." She claimed she was frightened and tried to get away by running toward the stairs, but he caught her, they struggled as he tried to pull her pants down, and as she screamed, he covered her mouth with his hand. As he carried her to the back of the basement, she scratched his face. He indicated that he would use a condom if she let him, but would not do so if she continued to resist. She continued to struggle, tore his shirt, and chairs were knocked over. During the struggle, she heard Patricio call out, and she responded "I'm here, I'm next to the paper." She denied having told him "I'm back here fixing something." She claimed that when Patricio appeared, defendant released her and she ran to him, crying and asking for help and indicating that defendant was trying to sexually assault her. However, she also testified that defendant had not struck her or touched her sexually. Bruises appeared several days later on her arms, but, insofar as no one asked about them, she did not mention the bruises to anyone else. She testified that Patricio escorted her upstairs and offered her cognac, and that she called her brother to pick her up. She testified at this trial that she did not tell her brother or her children what had occurred; at a prior trial, though, which ended in a hung jury, she testified that she told her brother that defendant had tried to sexually abuse her. When she got home, she told her sister, and then her ex-husband, who took her to the police.

Patricio testified that when he initially telephoned, the complainant had not indicated that defendant was at the restaurant. Her presence at that time surprised him, insofar as she had never been in the restaurant that early, and when she arrived early, it was in her husband's company. When he arrived at the restaurant, he did not hear anything unusual, the washing machine was not on, he did not observe that

anything had been knocked over, and things appeared to be in order. As he walked toward the back of the basement, he called out for the complainant, who answered in a normal voice "I'm here fixing some things." As he approached, she ran out, but was dressed normally, without bruises or scratches. Crying, she claimed that defendant had tried to rape her. Patricio then saw defendant emerge with an unbuttoned shirt and opened pants, and a reddened cheek. Defendant told Patricio that the complainant had thought it was her husband arriving. The complainant, though hearing this explanation, did not respond. He took her upstairs and offered her a drink, but she declined, indicating that she did not want police to think she had been drinking. Patricio knew that the complainant and defendant had a close relationship, but never saw them act romantically. The complainant's sister also testified that at 7:30 A.M. their brother knocked on her door in the company of the complainant. When the sister saw the complainant crying, she asked what had happened, and complainant explained that defendant had tried to sexually abuse her. The sister had known defendant since childhood, described him as a family friend and as a "very good" and peaceful person. Detective Madeline Thorsen interviewed a crying complainant that morning. With the use of an interpreter, she concluded that a knifepoint attempted rape had occurred. When she responded to the restaurant, she saw neither a knife nor knocked-over chairs.

On the defense case, police personnel testified that the complainant had told them that defendant held a knife to her throat and stated "you will be mine." The restaurant owner, as well as another coemployee, provided character testimony regarding defendant's reputation for peaceableness, and that the complainant, conversely, did not have a reputation for honesty and truthfulness.

Defendant, seeking to call to the stand Robert Santos, made an offer of proof regarding a prior, purportedly romantic, incident between defendant and the complainant to rebut her claim that they were not romantically involved. Santos was another mutual friend of both parties. Santos testified outside the presence of the jury that on a prior occasion, the complainant and defendant visited him and his wife and over the course of about 1¹/₂ hours the complainant was "putting her hand over [defendant's] leg and [her] head on his shoulder, and she was very friendly with him." Further, she patted his leg and they were "[a]lmost hugging." Santos testified that he has known both parties for approximately 8 to 10 years, and was "surprised with the action because * * * both of them are married." The

prosecutor opposed introduction of this testimony on the basis that it was collateral and also incredible. The prosecutor specifically stated that "I don't believe there is any good faith basis that this witness was an eyewitness to anything romantic or sexual between these two individuals. If he was, I think he was an appropriate witness * * * so unless there is a specific proffer here that this witness observed something romantic, something sexual that the complainant denied ever having happened on the witness stand, unless it's some kind of specific proffer," the evidence should be excluded.

The court found that whether or not this conduct was romantic was immaterial, insofar as CPL 60.42, the "rape shield law," requires a specific instance of sexual conduct between the parties for admissibility into evidence. Defendant contends, though, that he was not seeking to introduce the complainant's sexual history in contravention of the rape shield law but, rather, was seeking to rebut evidence introduced by the People. He contended that the People had opened the door to evidence of a prior romantic incident by the complainant's denial that the two had been romantically involved. The proposed evidence was precluded. In summation, defense counsel suggested that the complainant fabricated the attempted rape on the basis of fear that her husband would find out about an affair between the defendant and the complainant. The prosecutor responded in summation that "there isn't a shred of evidence to suggest that there was a relationship, not a single shred of evidence," that the relationship was other than one akin to brother and sister, and that "there is not one bit of evidence in the record that they ever held hands, kissed, hugged, looked like a couple in that kind of way * * * ." Interestingly, at sentencing, the prosecutor noted that defendant had been law abiding and honorable, that he had been offered a plea agreement involving a misdemeanor conviction with no jail term, and presently recommended the minimum term. The court, noting that defendant had received "the best community support of any defendant I've ever sentenced," concluded that defendant's actions in the present connection had been out of character and sentenced him to the minimum legal term.

This is an unsettling case that ultimately rests on the respective credibility of the parties. The only evidence of attempted rape was provided by the complainant's testimony. In some regards, the complainant's testimony lacked internal consistency and consistency with other evidence, yet the record bears out that when Patricio arrived, they were involved in

some kind of a sexual situation. The critical question is whether or not it was consensual on the complainant's part, or whether the complainant fabricated a claim of sexual assault in order to conceal an ongoing affair, a claim at the core of defendant's theory. In this regard, evidence of a prior romantic relationship between the parties has a plausible bearing on her credibility, especially since she clearly and emphatically denied any romantic aspect to their relationship. At the core of the defense is the assertion that they were maintaining an affair. Defendant was entitled to elicit the testimony in issue to rebut assertions introduced in the first instance by the complainant, on a matter that was central to, rather than merely collateral to, the core issues of this case (*People v Carroll*, 95 NY2d 375, 386 [2000]). The goal, as we have previously characterized evidence regarding prior intimacy between a sexual abuse complainant and a defendant, is not to impute unchastity to the complainant, but rather to examine state of mind evidence and defendant's intent as related to the disputed issue of consent (*People v Jovanovic*, 263 AD2d 182 [1999], *appeal dismissed* 95 NY2d 846 [2000]), so that this evidence was not properly barred by the rape shield law. Defendant is entitled to a retrial solely on this ground. We have considered his remaining contentions and find them to be without merit. Concur—Buckley, P.J., Tom, Rosenberger, Lerner and Marlow, JJ.