**FILED**
**AUGUST 26, 2021**
**In the Office of the Clerk of Court**
**WA State Court of Appeals Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37991-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID ROBERT VIGIL, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — May a man, accused of disrobing and photographing the vagina of a woman while she slept, introduce evidence of the woman previously repositioning the man's underwear and photographing the man's penis, among other misbehavior, while he slept in order for the man to bolster his defenses of consent and lack of sexual gratification? We hold the introduction of the evidence to be irrelevant for the defense of consent under the definition of the term for sex crimes. We hold the evidence to be relevant to the charged crimes' element of sexual gratification and further hold that the

evidence does not contravene the rape shield statute. We reverse David Vigil's

convictions for indecent liberties and voyeurism and remand for a new trial.

FACTS

This prosecution arises from the photographing of J.B.'s private areas by

defendant David Vigil while J.B. slept, was passed out from alcohol, or both. J.B. and

Vigil were army friends. The State charged Vigil with indecent liberties and voyeurism.

Vigil agreed he photographed J.B., but claimed she consented to his conduct because of

her past behavior and also argued that his acts were not motivated by sexual gratification

given the context in which his behavior occurred.

In 2012, David Vigil met J.B., the complaining witness, while stationed at

Alaska's Fort Wainwright Army Base, home of the Arctic Warriors. At the time, J.B.

supervised Vigil. J.B. and Vigil worked on friendly terms, but they did not maintain a

close social relationship outside of work. In 2013, the army transferred J.B. to Joint Base

Lewis McCord. In 2015, Vigil also transferred to Joint Base Lewis McCord.

On David Vigil's transfer from Alaska to Washington State, Amber Roberts, a

mutual friend of J.B. and David Vigil at Fort Wainwright, suggested that Vigil ask J.B. if

he could stay at her residence in Tacoma and park his vehicle at her residence during a

leave. Vigil followed this advice and, after his temporary stay at J.B.'s dwelling, Vigil

developed a close relationship with J.B. and J.B.'s husband, Eric Bailey. This warm

relationship continued for the next three years. Vigil had a key to the couple's home.

2

The three engaged together in recreational activities, including fishing, boating, shooting, barbecuing, hiking, and drinking. At least once a month, when on evenings that the three friends imbibed alcohol, Vigil spent the night at the Bailey residence to avoid driving. Vigil also house sat and cared for J.B.'s and Bailey's dogs when the couple took trips.

David Vigil and J.B. socialized independently of Eric Bailey and other friends. On these occasions, the two cooked, drank, and went to restaurants for dinner. Both deny the fostering of any romantic attachment.

On February 3, 2018, David Vigil, J.B., and Eric Bailey, with two other couples, celebrated Bailey's and J.B.'s birthdays at the El Guacho restaurant, an award winning Brazilian steakhouse. Before leaving the Bailey residence for the Tacoma restaurant, Vigil and Eric Bailey each drank a glass of whiskey. J.B. does not recall if she drank alcohol then. At El Gaucho, the seven friends ate dinner and drank alcohol, including cocktails, whiskey, and two bottles of wine. After two and a half hours at El Gaucho, everyone went to the Tacoma Cabana Club. The group remained for an hour at the club and continued to drink alcohol. J.B. and Vigil became intoxicated. At 11:00 p.m., the party ended, after which Vigil, J.B., and Bailey returned to the Bailey residence.

Once at the Bailey house, Eric Bailey, J.B., and David Vigil continued to drink. The trio watched television in the living room for an hour. All three sat on a couch, with J.B. on the left end, Bailey in the middle, and Vigil on the right end. J.B. fell asleep on the couch. When Bailey grew weary, he unsuccessfully attempted to awaken J.B., and

3

then he left her for the couple's bedroom upstairs. Vigil walked to the guest room and laid on the bed, but could not sleep because of the sound of the television. He returned to the living room to lower the sound. J.B. remained on the couch.

In the wee hours of February 4, 2018, after David Vigil returned to the living room, Vigil proceeded to photograph J.B. with his cell phone as she lay unconscious. J.B. wore leggings. Vigil first photographed J.B.'s clothed buttocks, but, because of the shear leggings, the picture showed J.B.'s underwear. CP 193. Vigil next partially pulled down J.B.'s leggings and photographed tattooed lips on one of J.B.'s hips.

David Vigil progressively disrobed J.B. as he snapped additional photographs with his phone. Vigil manipulated J.B.'s body in order to take photographs at various angles and of different parts of J.B.'s body. J.B. is of large stature. Vigil encountered difficulty manipulating the body. Vigil eventually drew aside J.B.'s underwear to photograph J.B.'s privileged area. He snapped a series of close-up pictures of the anus and vagina. One of the photographs of the anus displayed a finger, although the finger does not touch J.B.'s body. The photographing lasted twelve minutes.

During trial, David Vigil testified that he took the pictures of J.B. as a joke. He averred that he, J.B., and their Alaska friend Amber Roberts maintained a friendship, in which they would share stories and, sometimes, two of them would share comments about the third person. Vigil testified that, on the night of February 4, 2018, he saw

4

J.B.'s leggings stretched to the point that one could see through them.  He thought the leggings tacky and wished to send a picture of the leggings to Amber Roberts in jest.

David Vigil testified that he manipulated J.B.'s leggings in order to obtain a better view of the tattoo on J.B.'s right buttock.  Vigil averred that the tattoo depicted Amber Roberts' lips.  Roberts had long before kissed J.B.'s buttock with lipstick, and J.B. had the imprint tattooed.  Vigil planned to joke with Roberts that her lips had grown larger as a result of J.B. gaining weight.  He considered his plan a joke.  Vigil acknowledged that he took photographs of more intimate areas of J.B.'s body, including her vagina and anus.  He asserted that he also planned to send these additional humorous images to Roberts.  When asked about the humor found in the images, Vigil responded that the hair observed in these images was comical.

David Vigil denied being aroused as a result of taking the pictures of J.B. or when viewing the pictures.  He denied finding J.B. physically attractive.  According to Vigil, J.B. was overweight.

In the early morning hours of February 4, J.B. awoke to the sensation of someone's fingers touching her vagina.  She heard the clacking of a camera.  She opened her eyes and saw David Vigil standing over her with his cellphone in hand.  Her pants were down to her knees.  At trial, J.B. testified that she did not see Vigil touching her, but his hands were in her crotch area.

When J.B. awoke, David Vigil repeatedly told her to hush and return to sleep. J.B. pulled up her pants and asked Vigil what he was doing. She also told him to hand her his phone as she believed he had snapped pictures. In response to J.B.'s questioning about his conduct, Vigil repetitively denied any bad behavior. He also repeatedly exclaimed: "I'm sorry, I'm sorry, I'm sorry." Report of Proceedings (RP) at 209. J.B. heard a noise that sounded like the deletion of photographs from a phone. Vigil showed her the phone to prove he had taken no pictures.

An emotional and panicked J.B. yelled for Eric Bailey. Bailey, asleep in the upstairs bedroom, ran downstairs in response to J.B.'s screams. Bailey found his wife walking into the kitchen while screaming and pointing in fear. J.B. repeatedly told her husband that David Vigil had touched her and had taken photographs. A confused Bailey asked J.B. to proceed upstairs so that he could speak with Vigil and assess the situation. Once upstairs, J.B. called 911 with Bailey's phone and reported that she had been raped. She asserted that Vigil had been on top of her in a sexual manner. J.B. volunteered to dispatch that she was intoxicated.

David Vigil apologized to Eric Bailey, and, on Bailey's request, Vigil unlocked his phone and showed Bailey his cell phone photo gallery. A pop-up icon revealed that pictures were deleted. Bailey did not see the photos Vigil took. Bailey told Vigil to leave, and they would resolve the crisis later. Once Vigil left, J.B. returned downstairs, and Bailey and J.B. discussed Vigil's behavior.

6

Tacoma Police Department officers responded to J.B.'s residence early that morning of February 4.  J.B. recalls little of what she told officers.  The officers advised J.B. to complete a rape kit at a hospital.

At Tacoma General Hospital, the examining nurse noticed no injury to J.B.  The nurse procured multiple swabs from J.B.'s mouth, perianal area, internal anal area, perineal, vaginal region, and from under fingernails on each hand.  The swabs lacked DNA other than J.B.'s DNA.  In other words, none of David Vigil's DNA was found in J.B.'s private areas.  At the hospital, J.B. reported that Vigil inserted his fingers into her vagina.

After interviewing J.B., Tacoma Police Officer Joshua Avalos contacted military police at Joint Base Lewis McCord and asked the police to detain David Vigil.  Officer Avalos and his supervising officer traveled to the joint base and interviewed Vigil.  Vigil disclosed that he and J.B. fell asleep on the same couch.  He attempted to wake J.B., and she awoke screaming.  She asked to look at his phone.  After interviewing Vigil, Officer Avalos confiscated Vigil's phone.

In conformance with the adage that one cannot permanently erase any data from a computer, the State recovered the photographs shot by David Vigil of J.B. from Vigil's cellphone.  At trial, the State showed the court the intimate photographs taken by Vigil of J.B.

Because David Vigil testified that he took the photographs to show Amber Roberts

7

as a joke, the State questioned David Vigil at trial about his communication history with Roberts. The State presented a call log, from 2016 to the seizure of Vigil's phone in 2018. The log catalogued Vigil's phone communications with Roberts during this time and listed only a total of seven times through multimedia message, text message, and a phone call. Vigil last received a message from Roberts in July 2017. The State questioned Vigil regarding each communication. None of the messages contained photos or texts similar to the photos Vigil took of J.B. on February 4.

To rebut the State's evidence about communications with Amber Roberts, David Vigil testified regarding contacts with Amber Roberts via Facebook. Vigil testified that he found forty-one Facebook communications with Roberts from November 2015 to January 2018. Vigil discovered one communication from 2017 that depicted a giant penis on a truck traveling on the freeway. Vigil averred that the image included a sexual connotation. On the post to Roberts, Vigil wrote: "'I think I saw this heading to your place.'" RP at 459. Roberts responded: "'embracing the suck at its finest.'" RP at 459-60. On cross-examination of Vigil, the State inquired whether "'embracing the suck'" holds a sexual connotation or whether the saying refers to the embracement of a nonsexual difficulty. Vigil acknowledged that the phrase "embracing the suck" did not carry a sexual connotation. RP at463.

David Vigil retrieved two Facebook communications from 2018. During trial, he avowed that his communications with Roberts ended the month after his photographing

J.B., when he removed Roberts as a Facebook "friend." RP at 456. He explained that he considered Roberts to be a closer friend with J.B. such that Roberts would report all of his Facebook postings to J.B. Vigil never communicated with Roberts about the February 4 occurrence because of his embarrassment of being charged with rape.

## PROCEDURE

The State of Washington charged David Vigil with rape in the second degree. The State later amended the information by removing the rape charge and charging Vigil with voyeurism in the first degree and indecent liberties. Vigil waived his right to trial by jury.

Before trial, David Vigil brought a motion to admit evidence of earlier "sexual conduct." Clerk's Papers (CP) at 12-30. He sought admission of testimony that J.B. and Eric Bailey engaged in similar conduct toward him. Vigil listed four previous occasions when J.B. took photographs of his genitalia as he slept after a heavy night of drinking. He alleged through a declaration from his counsel:

> Mr. Vigil did not intend to and did not believe he was committing a crime when he photographed JB under the circumstances in which he did so. Sexually intimate photos of him and his erect penis had been taken by JB under nearly exact circumstances where he was asleep and/or passed out on her couch from excess alcohol consumption and his erect penis was exposed by JB by pulling the waistband of his shorts away from his waist.
>
> A similar incident occurred where JB similarly pulled Mr. Vigil's waistband away from his waist to expose his penis after another night of heavy drinking by both. Mr. Vigil awoke, asked JB what was going on and she replied "nothing".

9

Another night after heavy drinking, he awoke in the bed provided from [sic] him by the Bailey's, experienced Mr. Bailey ejaculating on his face with JB standing near Mr. Bailey laughing, looking at her phone saying she was going to send the picture to a mutual friend, Amber.

A final sexually explicit incident by JB on Mr. Vigil occurred on JB's living room couch, again after another night of heavy drinking, where Mr. Vigil passed out sitting up on the couch while playing video games with Mr. Bailey. He was awakened by Mr. Bailey to find JB, previously seating [sic] between the two men, slumped into Mr. [Vigil's] lap with her mouth on his exposed penis which had been in his zipped pants when he passed out.

David Vigil's taking photos of JB's intimate sexual body parts is not a crime. . . . He was simply acting within the consensual sexual conduct boundaries established by JB in their relationship. He was doing what JB had done to him, and, as such, she had initiated by her conduct toward Mr. Vigil, approved and consented to his behavior toward her.

CP at 14-15.

David Vigil claimed he had permitted J.B. to engage in the same sexual conduct for which the State charged him with a crime. He argued that his failure to report the conduct and J.B.'s continued engagement in further sexual conduct demonstrated mutual consent to the sexual play. When he photographed J.B.'s genitals his purpose was to engage in reciprocal conduct with J.B. Vigil maintained that admission of the evidence was not barred by RCW 9A.44.020, Washington's rape shield statute. Instead, according to Vigil, prohibiting admission of the evidence would violate his constitutional right to present a defense.

The State responded that the evidence of earlier conduct by J.B. did not support an inference that J.B. consented to Vigil's behavior on February 4, 2018. The State also

10

argued that Vigil sought to admit evidence of credibility that the rape shield statute barred.

On October 2, 2018, the trial court heard oral argument on David Vigil's motion to admit evidence of prior conduct of J.B. During argument, defense counsel conceded that Vigil lacked a defense of consent to the charge of indecent liberties. According to counsel, the earlier actions of J.B. should be permitted as relevant to the defense of consent for the charge of voyeurism and as relevant to sexual gratification, an element of both crimes charged.

The trial court observed that at least one incident of photographing David Vigil's penis echoed the facts behind the charges against Vigil. Nevertheless, Vigil provided no time frame as to the incident's occurrence. The court remarked that the proffered evidence was remote in time, was minimally probative, and attacked the character of the purported victim.

In response to the trial court's remarks, David Vigil's counsel commented that Vigil had supplied him the dates of the incidents, but that he (counsel) erred by omitting the dates from his declaration. The trial court replied:

> In regards to the time, it is one factor of many and would only go, possibly, to incident No. 1, the photographing of the erect penis because, as I indicated in my decision, if that was close in time to the alleged incident in this case, then I believe the context is relevant and will go to the defendant's defense, as I heard Counsel raise, as to what was in his mind when he did something of a similar nature in taking the photographs of the alleged victim; and I think, then, that may very well make it relevant.

11

RP (Oct. 2, 2018) at 40-41.

At the close of the motion hearing, the trial court denied David Vigil's motion to introduce evidence of earlier conduct of J.B. The trial court commented that it would reconsider the relevancy of the first photographing incident if Vigil supplied a date for the occasion close in time to February 4, 2018.

David Vigil submitted a motion for reconsideration with an accompanying declaration in support of the motion. The declaration assigned a date for the first incident as mid to late October 2017. In his declaration, Vigil averred that, on the night of the October 2017 incident, he fell asleep after an evening of heavy drinking and awoke to a flash. He saw J.B. taking a picture while pulling the waistband of his underwear away from his body and exposing his penis. Vigil asked J.B. about her behavior, and she answered: "'nothing go back to sleep.'" CP at 48.

In support of his motion for reconsideration, David Vigil argued that the October 2017 occurrence was relevant because the occurrence happened four months before his behavior on February 4, 2018. Vigil emphasized that he should be able to explain his reason for photographing J.B. as part of his defense.

The trial court denied the motion to reconsider. The court commented that, in light of the rape shield statute, the evidence would present earlier bad acts of the victim.

A different trial court judge presided over trial then entertained David Vigil's motion to admit evidence. J.B. testified, at trial, that David Vigil inserted his fingers in her vagina. Vigil, during his testimony, denied placing fingers in the vagina. During trial, J.B. confirmed that, when not manipulated, her underwear fully covered her vaginal and rectal areas.

During closing, the State's counsel argued:

> He wants the Court to believe that it was almost—it's almost a level of disgust that he has for [J.B.] to support his position that it was not done for purposes of gratifying sexual desire. But for somebody who he was so disgusted with because she had pubic hair or that she had gained a little bit of weight, the evidence supports that this is the one female in his life who he communicates with the most. The most. And that he's trying—he's asked the Court to believe that she was so disgusting in that state, so tacky, so—that he's going to do what he did to get down to her vagina, is not believable, it's not reasonable, Your Honor.
>       . . . [H]e wants the Court to believe that it's reasonable that this friend, who he occasionally has tagged in non-sexual posts, other than an oversized penis being flat-bedded down the middle of the highway, he wants the Court to believe that that then is enough to establish this devious and kind of unnormal [sic] relationship to the point where he could send a picture of her friend's bare vagina to him.
>       That's not reasonable. It's not a reasonable excuse. It's not a reasonable explanation. He is not credible. He has bias. He knows that if he is convicted of this, he is going to lose his job in the Army, and he admitted that he loves working for the Army.

RP at 468-69.

In closing, defense counsel argued that no evidence, or inference therefrom, established that David Vigil took the pictures for the purpose of sexual gratification. He asked the court to convict Vigil of the lesser charge of assault in the fourth degree.

13

In rebuttal, the State's attorney commented:

> I will point out that the Court can see in those pictures that her partially-covered vagina in the second or third-to-last is partially covered because a side of the underwear is almost going right down the center of her vagina. And then, in that final photograph, the vagina is completely uncovered. *It is absurd to me that Mr. Vigil, in that state of mind, would be a gentleman in an attempt to try to avoid actually placing his hands on her vagina and instead be so careful as to go around the edges and around the sides. I don't think that's reasonable.*

RP at 484-85 (emphasis added). The prosecuting attorney further remarked:

> [I]n the State's opinion, [it] would be an absurd result that if your intent, as Mr. Vigil would have you to believe, was to embarrass or humiliate [J.B.], that he is not guilty of this. Consider—I don't think he's being credible in that, that he's not attracted to her when he took these pictures anyways. But even if he was taking these pictures in order to text them to Amber, that both could be true. That it's very reasonable that, yeah, even if he did have that intent, you also do that for gratifying the sexual desire.

RP at 485-86.

The trial court convicted David Vigil of voyeurism in the first degree and indecent liberties. The court entered the following findings of fact:

> 20. It is uncontroverted that this [the disrobing and photographing] was done without J.B.'s consent.
> . . . .
> 25. The defendant was later questioned by police and denied touching or photographing J.B.
> . . . .
> 30. The defendant touched J.B.'s genital area.
> 31. The defendant testified that his purpose in taking these photographs was to later send them to a friend, Amber Roberts. The defendant denied that he took these pictures for purposes of sexual gratification. The Court does not find this credible.

. . . .

33.  The defendant testified on direct examination that he had the type of relationship with Ms. Roberts that sending these photographs to her would be appropriate.  The Court does not find this credible in part because on surrebuttal, the defendant testified that he knew Ms. Roberts would be unhappy with what he had done so he stopped contacting her and removed her from his Facebook "friends."

34.  Based on the totality of the circumstances, the reasonable inference from the defendant's actions is that he took the pictures for the purpose of gratifying his sexual desires.

CP at 194-95.  The trial court did not find that David Vigil inserted his fingers into J.B.'s vagina.

LAW AND ANALYSIS

On appeal, David Vigil assigns error to the trial court's exclusion of evidence about earlier sexual behavior of victim, J.B., toward him.  According to Vigil, J.B. twice previously took a picture of his erect penis while he slept, Vigil once awoke to find J.B. passed out with her mouth on Vigil's penis, and J.B.'s husband, in J.B.'s presence, once ejaculated on Vigil's face while he slept.  Vigil contends that this evidence bore relevance to his defenses of consent and the lack of sexual gratification.  In addition to arguing that the evidence rules permitted the introduction of the evidence, he contends his constitutional right to a fair trial compelled the allowance of the evidence.

We divide our analysis between the defenses of consent and lack of sexual gratification.  Within those divisions, we discuss separately the defenses as applied to the distinct convictions of indecent liberties and voyeurism.  We then analyze separately the

Washington evidentiary rules and the constitutional provision affording the accused a right to a fair trial. First, however, we resolve David Vigil's assignments of error to some of the trial court's findings of fact, the building blocks of the convictions.

Findings of Fact

Because we reverse David Vigil's convictions even while accepting the trial court's findings of fact, addressing Vigil's challenge to findings is not necessary. Nevertheless, we review the challenge because some of the findings could impact our determination of whether evidentiary error was harmless.

David Vigil contends that the trial court erred in entering findings of fact 20, 31, 33, and 34 because those findings were not informed by the evidence excluded. Vigil states that this challenge is not a standalone ground for reversal, but rather to ensure that we do not treat these findings as verities on appeal. Vigil challenges only one of the findings of fact, finding of fact 33, on the basis that the evidence, as submitted at trial, did not support the finding.

This court reviews a trial court's findings of fact for substantial evidence. *State v. Delbosque*, 195 Wn.2d 106, 116, 456 P.3d 806 (2020). Substantial evidence exists when a sufficient quantity of evidence in the record would persuade a fair-minded, rational person of the truth of the finding. *State v. Hill*, 123 Wn.2d 641, 644 870 P.2d 313 (1994).

We repeat the challenged findings of fact:

> 20. It is uncontroverted that this was done without J.B.'s consent.

16

. . . .

31. The defendant testified that his purpose in taking these photographs was to later send them to a friend, Amber Roberts. The defendant denied that he took these pictures for purposes of sexual gratification. The Court does not find this credible.

. . . .

33. The defendant testified on direct examination that he had the type of relationship with Ms. Roberts that sending these photographs to her would be appropriate. The Court does not find this credible in part because on surrebuttal, the defendant testified that he knew Ms. Roberts would be unhappy with what he had done so he stopped contacting her and removed her from his Facebook "friends."

34. Based on the totality of the circumstances, the reasonable inferences from the defendant's actions is that he took the pictures for the purpose of gratifying his sexual desires.

CP at 194-95.

Finding of fact 20 assumes that David Vigil did not contest the State's position that J.B. did not consent to the unclothing and photography. We disagree with this assumption. Vigil vigorously argued J.B. consented to his conduct. Nevertheless, we agree with the finding to the extent that the underlying facts indisputably show J.B. incapable of consent.

We conclude that substantial evidence supports findings of fact 31 and 34 to the extent of the circumstances considered by the trial court. The trial court, not us, weighs the credibility of the parties and witnesses. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); *In re Custody of SA-M*, 489 P.3d 259, 266 (Wash. Ct. App. 2021). Nevertheless, we later decide that the trial court failed to consider the totality of the

circumstances.  Instead, the court excluded evidence proffered by David Vigil to show the context of his behavior.

When challenging finding of fact 33, David Vigil contends that he never testified that he knew Amber Roberts would be unhappy with his photographing J.B.'s private parts or the potential unhappiness led him to stop contacting her.  We agree. Nevertheless, the trial court stated that it relied on this supposed testimony "in part" to conclude that he lacked the type of relationship with Roberts in which photos of a bare vagina or rectum would be sent.  Other evidence at trial showed that David Vigil never sent Roberts similar types of photographs.  Substantial evidence supports the trial court's finding that David Vigil did not have a relationship with Amber Roberts in which he would send the types of photos at issue in this case.

Defense of Consent

We later reverse David Vigil's conviction when holding that the trial court erred in excluding evidence of earlier behavior of J.B., because this evidence related to Vigil's factual contention that he did not behave on February 4, 2018 through a motivation for sexual gratification.  Instead, his motive was to reciprocate J.B.'s actions directed at him.  Because of this later holding, we could avoid addressing the relevance of this evidence for purposes of Vigil's defense of consent.  We address the question, however, because of its possible impact on our later harmless error analysis.

18

David Vigil maintains that evidence of the four proffered instances of sexual behavior of J.B. would demonstrate that his actions against J.B. were done with the consent of J.B., as they were committed within the boundaries of their established relationship. Therefore, the trial court erred when excluding the evidence. We disagree because of the law's definition of "consent."

The State of Washington charged David Vigil with indecent liberties and voyeurism in the first degree. RCW 9A.44.100(1)(b) establishes the crime of indecent liberties:

> A person is guilty of indecent liberties when he or she knowingly causes another person to have sexual contact with him or her or another . . . [w]hen the other person is *incapable of consent* by reason of being mentally defective, mentally incapacitated, or physically helpless.

(Emphasis added). RCW 9A.44.115(2)(a) addresses the crime of voyeurism in the first degree and provides:

> A person commits the crime of voyeurism in the first degree if, for the purpose of arousing or gratifying the sexual desire of any person, he or she knowingly views, photographs, or films:
> (i) Another person without that person's knowledge and *consent* while the person being viewed, photographed, or filmed is in a place where he or she would have a reasonable expectation of privacy; or
> (ii) The intimate areas of another person without that person's knowledge and *consent* and under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.

(Emphasis added).

19

The State's charge of indecent liberties rested on J.B.'s inability to give consent as a result of mental incapacitation because of her sleep. David Vigil agrees that consent was not a defense to this charge because by definition the State must prove the inability to consent. Therefore, we only analyze whether Vigil could have presented his proffered evidence to defeat the charge of voyeurism. Consent is a defense to voyeurism.

RCW 9A.44.010(7) defines "consent" for purposes of crimes catalogued under RCW Chapter 9A.44, one of which crimes is voyeurism:

> "Consent" means that *at the time of the act* of sexual intercourse or *sexual contact* there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual contact.

(Emphasis added.)

Evidence holds relevance if it tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. To be relevant, evidence must (1) tend to prove or disprove the existence of a fact and (2) that fact must be of consequence to the outcome of the case. *Davidson v. Municipality of Metropolitan Seattle*, 43 Wn. App. 569, 573, 719 P.2d 569 (1986). Thus, for evidence to be relevant to a defense of consent the evidence must show that the victim consented at the time of the sexual contact.

Under RCW 9A.44.010(7)'s definition of "consent" the three earlier acts of J.B. bore no relevance to whether J.B. consented to the touching and photographing of J.B. on February 4, 2018. RCW 9.44.020's definition of consent requires consent in the

20

present, such that any conduct in the past lacks importance. J.B. did not orally give consent, nor did she engage in conduct on the night of February 4 that demonstrated consent. Even if J.B. had willingly posed naked for David Vigil to photograph her many times earlier, she, under the undisputed facts, gave no consent to the shuffling of her garments and photographing of private bodily parts on February 4. The undisputed evidence showed J.B. to be unconscious when Vigil rearranged J.B.'s underwear and photographed her. On this one occasion, she could not have given consent because of her sleep.

David Vigil attempts to expand the meaning of "consent" to include his assumptions as to sexual boundaries with J.B. Nevertheless, under RCW 9A.44.010, unilateral assumptions of the accused do not equate to consent.

J.B.'s former purported similar conduct supports a verdict that J.B. committed a crime against David Vigil, not that Vigil now owned an excuse to commit the same crime against J.B. To repeat a political phrase, under the criminal law, there is no quid pro quo.

The admissibility of past sexual behavior evidence lies within the sound discretion of the trial court. *State v. Hudlow*, 99 Wn.2d 1, 17, 659 P.2d 514 (1983). This court reviews the trial court's evidentiary ruling for an abuse of discretion. *State v. Arndt*, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). The trial court did not abuse its discretion when excluding evidence of J.B.'s earlier conduct on the issue of consent.

Because we conclude that David Vigil's proffered evidence lacked relevance to the defense of consent, we do not address whether the rape shield statute would have precluded introduction of the evidence on this issue.

David Vigil also argues that the exclusion of his evidence breached his constitutional rights, in addition to the evidentiary rules. Vigil assigns error under the right to present a defense, to confront and cross-examine adverse witnesses, and to a fair trial found in the Sixth Amendment to the United State Constitution and article I, section 22 of the Washington State Constitution. Again, we disagree.

The federal and Washington State Constitutions guarantee criminal defendants the right to a fair trial in which they are permitted to confront adverse witnesses and present a defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. Nevertheless, a criminal defendant has no right, constitutional or otherwise, to have irrelevant evidence admitted in his or her defense. *State v. Darden*, 145 Wn.2d 612, 624, 41 P.3d 1189 (2002).

Sexual Gratification

David Vigil next argues that the trial court should have admitted the four incidents of behavior by J.B. because the testimony would have raised reasonable doubt as to whether he touched J.B. or took photographs of her for sexual gratification, on the one hand, or as a joke or in reciprocity for J.B.'s earlier conduct, on the other hand. He contends that, without knowledge of the boundaries of his and J.B.'s relationship, the

trier of fact lacked important evidence behind his motivation to photograph J.B. In addition to contending that exclusion of the evidence violated state rules of evidence, Vigil argues that the prohibition breached his right to a fair trial under the state and United States constitutions. In response, the State argues that the evidence lacks relevance and the evidence would violate the rape shield statute. We address relevance, then the rape shield statute, and finally constitutional protections.

*Relevance*

To repeat, the State convicted David Vigil with indecent liberties and voyeurism. The crime of indecent liberties consists of causing another to have "sexual contact" without the other person being able to consent. RCW 9A.44.100(1)(b). RCW 9A.44.010(2) defines "sexual contact" for purposes of sex offenses as:

> any touching of the sexual or other intimate parts of a person done for the *purpose of gratifying sexual desire* of either party or a third party.

(Emphasis added.) The crime of voyeurism occurs when one, "for the purpose of arousing or gratifying the sexual desire," knowingly views, photographs, or films another's intimate areas without consent. RCW 9A.44.115(2)(a). Thus, to convict David Vigil of either crime, the State needed to show sexual gratification motivated his conduct. We rule that evidence proffered by Vigil was relevant to the element of sexual gratification.

ER 402 declares:

23

> All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state. Evidence which is not relevant is not admissible.

In turn, ER 401 defines "relevant evidence:"

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

To be relevant, evidence must (1) tend to prove or disprove the existence of a fact, and (2) that fact must be of consequence to the outcome of the case. *Davidson v. Municipality of Metropolitan Seattle*, 43 Wn. App. 569, 573 (1986).

The threshold to admit relevant evidence is low; even minimally relevant evidence is admissible. *Kappelman v. Lutz*, 167 Wn.2d 1, 9, 217 P.3d 286 (2009); *Mutual of Enumclaw Insurance Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 729, 315 P.3d 1143 (2013). Evidence tending to establish a party's theory, or to qualify or disprove the testimony of an adversary, is relevant evidence. *Lamborn v. Phillips Pacific Chemical Co.*, 89 Wn.2d 701, 706, 575 P.2d 215 (1978); *Hayes v. Wieber Enterprises, Inc.*, 105 Wn. App. 611, 617, 20 P.3d 496 (2001). Relevant evidence embraces even facts which offer only circumstantial evidence of any element of a claim or defense. *Davidson v. Municipality of Metropolitan Seattle*, 43 Wn. App. 569, 573 (1986); 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 83 (2d ed. 1982).

The admissibility of past sexual behavior evidence is within the sound discretion of the trial court. *State v. Hudlow*, 99 Wn.2d 1, 17 (1983); *State v. Weaville*, 162 Wn. App. 801, 818, 256 P.3d 426 (2011). An abuse of discretion exists when the trial court's exercise of its discretion is manifestly unreasonable or based upon untenable grounds or reasons. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). A court abuses its discretion when it applies the wrong legal standard or bases its decision on an erroneous application of the law. *State v. Orn*, 197 Wn.2d 343, 351, 482 P.3d 913 (2021); *State v. Cox*, 17 Wn. App. 2d 178, 186, 484 P.3d 529 (2021). In *State v. Weaville*, 162 Wn. App. 801 (2011), this court reversed a conviction for rape based on the trial court's exclusion of relevant evidence based on a view that all evidence of the complainant's past sexual behavior was inadmissible.

We deem evidence that J.B. twice photographed David Vigil's penis while he slept relevant. Vigil advanced the theory that he photographed J.B.'s vagina partly as a joke and partly as a way to reciprocate for J.B.'s picturing his private parts. The proffered evidence directly supported his theory. The evidence tended to defeat the element of sexual gratification implanted in each charged crime.

In support of its position, the State cites *State v. Markle*, 118 Wn.2d 424, 823 P.2d 1101 (1992). On appeal, Frank Markle argued that the trial court committed reversible error in excluding defense evidence regarding prior sexual abuse of the complainant by Markle's son. The defense had sought to introduce testimony from the son that he had

25

sexually abused one of the complainants in order to establish an anger motive for the child to fabricate her allegations against Markle. According to the Supreme Court, the trial court had allowed defense counsel several opportunities to make a satisfactory offer of proof before finally ruling to exclude any mention of sexual abuse by Markle's son. The record confirmed that the trial court's determination that defense counsel was unable to support the theory of fabrication. We do not know the content of that record. We do not deem the Supreme Court affirmation of the trial court any comment on the relevance of the evidence.

The State may contend that evidence of J.B.'s earlier behavior violates the restraints found in ER 404(b). This evidence rule declares:

> (b) Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Boldface omitted.) David Vigil did not seek introduction of the evidence to show that J.B. acted in any particular way on February 4. Vigil wished to present the evidence to show his lack of a motive of sexual gratification.

*Rape Shield Statute*

RCW 9A.44.020, the "rape shield statute," applies not only to prosecutions for rape but other crimes found in RCW 9A.44, such as voyeurism and indecent liberties. RCW 9A.44.020 (1). The statute posits the general rule that evidence of the purported

26

victim's past behavior cannot be admitted for the purposes of impugning the credibility of the victim or to prove the victim's consent. RCW 9A.44.020. The statute reads, in relevant part:

> (2) Evidence of the victim's past sexual behavior . . . is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent.

David Vigil argues that the trial court erred in rejecting his proffered evidence under the rape shield statute because his past sexual conduct was factually similar to the facts of his prosecution. Evidence of the victim's past sexual conduct or distinctive sexual patterns can be relevant if it demonstrates enough similarity between the past consensual sexual activity and defendant's claim of consent. *State v. Jones*, 168 Wn.2d 713, 723, 230 P.3d 576 (2010). Presumably this rule also applies to discern the defendant's state of mind. Vigil also contends that the rape shield statute does not preclude evidence offered to show a lack of sexual gratification. We do not address Vigil's first argument, because we accept his second argument.

The language of RCW 9.44.020 does not prohibit evidence of the victim's earlier sexual behavior for purposes other than consent or credibility. In dicta, this court has ruled admissible evidence of the victim's prior sexual behavior to show the defendant's state of mind. *State v. Mounsey*, 31 Wn. App. 511, 522, 643 P.2d 892 (1982). Other jurisdictions have held that a rape shield statute does not preclude introduction of sexual comments uttered by the complainant to the accused beforehand because the comments

27

bear on the accused's state of mind at the time of the alleged rape. *Doe v. United States*, 666 F.2d 43 (4th Cir. 1981); *People v. Halcomb*, 176 Ill. App. 3d 100, 106-07, 530 N.E.2d 1074 (1988); *Wood v. State*, 736 P.2d 363, 366 (Alaska Ct. App. 1987); *State v. Ward*, 61 N.C. App. 605, 300 S.E.2d 855 (1983); *State v. Gibson*, 636 S.W.2d 956 (Mo. 1982).

We find no case directly addressing whether evidence of past behavior avoids a rape shield statute when the accused employs the evidence to bolster his theory of a lack of sexual gratification. The foreign decision most closely analogous is *People v. Loja*, 305 A.D.2d 189, 761 N.Y.S.2d 7 (2003). In *People v. Loja*, the trial court, in an attempted rape prosecution, excluded evidence of prior intimate contact between the complainant and Vincent Loja. The reviewing court recognized that the evidence could be used to attack the credibility of the purported victim. Nevertheless, the rape shield statute did not preclude the evidence because Loja was entitled to elicit the testimony for purposes of his state of mind and intent. The court ordered a new trial solely on this one ground.

The State contends that David Vigil sought to introduce evidence of J.B.'s prior conduct in order to bolster's Vigil's credibility and to indirectly harm J.B.'s credibility. We consider this evidence irrelevant to the credibility of J.B. or Vigil. Engaging in the purported conduct did not make J.B. less credible. Regardless, the evidence should be

introduced for the permissible purpose of showing the motivation of Vigil was other than sexual gratification.

*Constitutional Analysis*

Because the trial court excluded David Vigil's proffered evidence in a criminal trial context, we address the exclusion inside a constitutional law rubric. A constitutional analysis is not needed to determine admissibility because we already ruled, under court rules, that the proffered evidence is admissible. Nevertheless, if the exclusion breached Vigil's constitutional rights, a different standard of harmless error applies. We review de novo evidentiary challenges that raise constitutional issues. *State v. Orn*, 197 Wn.2d 343, 350 (2021); *State v. Cox*, 17 Wn. App. 2d 178, 186 (2021).

A criminal defendant possesses a constitutional right to present testimony in his or her defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Hudlow*, 99 Wn.2d 1, 14-15 (1983). This right extends to presenting a meaningful defense. *State v. Jones*, 168 Wn.2d 713, 721 (2010). The constitutional right to present a complete defense limits the broad latitude the government has to establish rules excluding evidence from criminal trials. *State v. Cayetano-Jaimes*, 190 Wn. App. 286, 297, 359 P.3d 919 (2015). A defendant has the right to present relevant evidence. *State v. Cayetano-Jaimes*, 190 Wn. App. 286, 297-98 (2015). The right to a fair trial carries with it the right to present a context in which the accused committed his or her acts. *State v. Jones*, 168 Wn.2d 713, 721 (2010).

29

Under constitutional strictures, court rules may not prevent a defendant from presenting highly probative evidence vital to the defense. *State v. Cayetano-Jaimes*, 190 Wn. App. at 298. No state interest can be compelling enough to preclude introduction of probative evidence consistent with the Sixth Amendment and Const. art. I, § 22. *State v. Cayetano-Jaimes*, 190 Wn. App. at 298. The trial court should admit probative evidence, even if suspect, and allow it to be tested by cross-examination. *State v. Cox*, 17 Wn. App. 2d 178, 188 (2021); *State v. Duarte Vela*, 200 Wn. App. 306, 321, 402 P.3d 281 (2017).

We have already ruled that the four events proffered by David Vigil hold relevance. The evidence was important, if not critical, to Vigil's defense. The evidentiary ruling barred Vigil from presenting the context in which he behaved on February 4, 2018. In turn, the trial court interfered in Vigil's presentation of a meaningful defense. We have no measurements available to assess the amount of probativity of pieces of evidence. Nevertheless, we deem evidence of J.B. engaging in the same conduct for which the State charged Vigil to be somewhere in the continuum from middling to highly probative. But since no court rule or statute demands exclusion, we need not find the evidence highly probative to declare a constitutional violation.

## Harmless Error

The State contends that, even under a constitutional standard of harmless error, the trial court's exclusion of the proposed testimony constituted harmless error, assuming any

error. David Vigil contends that the evidence would have cast reasonable doubt on the element of sexual gratification and thus its exclusion comprised harmful error. We agree with Vigil.

Under the nonconstitutional harmless error standard, an error is prejudicial if, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected. *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986). A higher standard applies against the State when the error garners constitutional standing. An error of constitutional magnitude can be harmless only if proved harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). An error is harmless and not grounds for reversal if the appellate court is assured beyond a reasonable doubt that the jury would have reached the same verdict without the error. *State v. Romero-Ochoa*, 193 Wn.2d 341, 347, 440 P.3d 994 (2019); *State v. Cox*, 17 Wn. App. 2d 178, 190 (2021).

Even when the defense is not airtight, prejudicial error may ensue. *State v. Jones*, 168 Wn.2d 713, 724-25 (2010). When the trier of fact may have viewed an alleged sexual encounter in a different light, reversible error follows. *State v. Jones*, 168 Wn.2d 713, 724 (2010). In *State v. Jones*, the Supreme Court held that exclusion of evidence of other conduct of the complainant constituted harmful error. This court ruled similarly in *State v. Cox*, 17 Wn. App. 2d 178 (2021).

We recognize that the State proved beyond a reasonable doubt a lack of consent for purposes of the indecent liberties charge regardless of the evidentiary error. But we conclude a reasonable trier of fact, after considering the excluded evidence, could have decided that the State failed to prove beyond a reasonable doubt that David Vigil behaved with a motivation of sexual gratification. Therefore, we cannot rule out a reasonable trier of fact acquitting David Vigil of both charges. J.B.'s earlier conduct, if true, could have singularly motivated Vigil to "do unto others, what has been done to you."

The State highlights David Vigil's action in erasing the photographs when J.B. awoke and his repeated apologies thereafter. This evidence, however, is consistent with a defense of lack of sexual gratification. One may have a guilty conscious without believing one has committed a crime. A man can deem himself compelled to apologize to a woman when seeing her exposed even if the viewing lacked sexual gratification. Even if Vigil took the photos as a joke, he still could recognize that J.B. would be angry if she discovered Vigil's camerawork.

We recognize that a judge, after a bench trial, convicted David Vigil of the crimes. Nevertheless, we know of no rule that allows us to consider harmless error in a different light in a bench trial as opposed to a jury trial. We should not assume that, because the court excluded the evidence, the court would not, when admitting the evidence and on reflection, deem the earlier conduct of J.B. to be important, if not critical, to the defense.

32

We note that David Vigil, when referencing J.B.'s behavior in photographing his penis, characterized her behavior as sexual in nature. One might argue that Vigil's reciprocal photographing of J.B. must have then also been sexual in nature. But logic defeats this argument. Vigil might be wrong in classifying J.B.'s photography as sexual. Assuming J.B. was motivated by sexual gratification, it does not follow that Vigil acted pursuant to the same motivation.

We acknowledge that the trial court found David Vigil's story of taking photographs to send to Amber Roberts unbelievable. Nevertheless, a trier of fact does not necessarily disbelieve all of the testimony of a witness, even a party witness, just because the trier deems some testimony false. The trial court could have believed the testimony of Vigil as to J.B.'s past behavior. The State never argued that the past behavior did not occur.

We note that J.B. testified that Vigil inserted fingers into her vagina, while Vigil denied any penetration. The trial court did not find that David Vigil inserted fingers into J.B.'s vagina. Thus, the court impliedly believed David Vigil's testimony and did not accept all of the testimony of J.B.

Prosecutorial Misconduct

Finally, David Vigil accuses the prosecutor of flagrant and ill-intentioned misconduct during closing argument. We need not and do not address this assignment of error.

CONCLUSION

We reverse David Vigil's convictions for indecent liberties and voyeurism based on evidentiary error. We remand for a new trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Staab, J.